# MARY E. HEAD v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

### In Banc, March 28, 1912.

1. **INSURANCE: Contract: Foreign Company: Compliance with Local Statutes.** Foreign insurance companies admitted to do business in this State can only contract within the limits prescribed by the statutes of Missouri. Under the license granted by the State they "shall be subjected to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers." The statutes of this State governing the conduct of business by such foreign companies are declaratory of the public policy of the State, and inhibit the doing of the business of insurance in this State by any corporation contrary to their regulations, by annulling all the stipulations which offend the provisions of the statutes.

2. ————: ————: **Place of Making: Law Governing: Conflict of Laws.** Where the initial and consummate stages of the formation of a contract of insurance were begun and ended in Missouri; the application for insurance made there; the contract delivered there, and the premium there paid upon which the obligation of the contract depended, then the contract is a Missouri contract and must be construed by the laws of this State.

3. ————: ————: **Statutes Applicable to Non-Residents.** The statutes of Missouri regulating the business of insurance were intended for the benefit and protection of all persons lawfully in the State and who obtained contracts of insurance there from a company licensed to make such contracts only in accordance with the laws of this State. These statutes are available for the protection of any such persons, though not citizens of Missouri, so contracting in this State.

4. ————: ————: **Subsidiary Contracts.** All subsidiary contracts made by the parties to an insurance contract are within the contemplation and purview of the original contract, and are not to be treated as independent agreements. Therefore, where a contract of insurance was originally made in Missouri and governed by its laws, and where the present beneficiary in 1904 entered into a loan agreement whereby she borrowed from the defendant insurance company $2270, and wherein she agreed that the policy in question should be governed and controlled

by the laws of the State of New York, such loan agreement does not constitute a new and valid contract which precludes the present beneficiary from any other redress under the policy than she would be entitled to if it had been settled in accordance with the laws of New York.

5. ———: ———: **Tender or Payment of Part of Unquestioned Sum Due: Accord and Satisfaction.** The payment or tender, under a policy of insurance, of a sum less than the full amount of the unquestioned sum due, does not deprive the beneficiary of a right to prosecute a suit for the entire amount due.

6. ———: **Payment: Waiver by Beneficiary.** The return to a beneficiary of a policy of insurance upon which a loan had been made, with an indorsement upon the policy that it should be taken for a certain amount of paid up insurance, and the retention of the policy for some time by the beneficiary, does not constitute a waiver of the beneficiary's right to demand a further sum due her under the policy, when she had no knowledge of her legal rights thereunder, never accepted the sum tendered her, transacted none of the business relating to the insurance, and had done nothing, in fact, except to place the policy, when returned, among the papers of the insured.

7. ———: **Forfeiture: Extended Insurance.** Under Sec. 6946, R. S. 1909, which provides for the application of a certain portion of the value of a policy to the purchase of extended insurance upon a failure to pay premiums, where a policy on which there had been a default had a sufficient value to extend it for its full amount beyond the death of the insured, and there was no waiver by the beneficiary of rights thereunder; a recovery of the full amount of the policy, less a loan made thereon, was warranted.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) The contract of insurance involved in this controversy is a contract under and to be construed and settled in accordance with law of the State of New York. The Missouri statute has nothing to do with the case. London Assurance v. Companhia de Moagens, 167 U. S. 149; Gibson v. Insurance Co., 77 Fed.

Rep. 561; Indemnity Co. v. Mfg. Co., 95 Fed. Rep. 111; Insurance Co. v. Dingley, 100 Fed. Rep. 408; Life Ass'n v. Harris, 94 Tex. 35; Story on Conflict of Laws, sec. 279a; Schwartz v. Insurance Co., 18 Minn. 448; Insurance Co. v. Phillips, 102 Fed. Rep. 9; Insurance Co. v. Babcock, 30 S. E. 273; Younge v. Society, 30 Fed. Rep. 902; Perry v. Wright, 41 Atl. 970; 16 Am. & Eng. Ency. Law, 855; Harrington v. Insurance Co., 58 Pac. 182; Insurance Co. v. Brinkley, 29 L. R. A. 712; Insurance Co. v. Hallock, 72 Am. Dec. 379.   (2)   The settlement of the policy after the default in 1905 was made in strict accordance with the contract of insurance as it existed under the policy loan agreement, and the policy loan agreement was not a contract entered into in Missouri or in any way affected by the Missouri statutes relating to insurance.   (3)   The acceptance of the policy endorsed for paid up insurance, resulting in the cancellation of the loan made in 1904, and the retention of the policy by the respondent for a period of some nine or ten months without complaint, was an accord and satisfaction as to the payment of the loan and the adjustment of the beneficiary's rights under the policy.   1 Page on Contracts, sec. 50; O'Bryan v. Kinney, 74 Mo. 125; Snider v. Express Co., 63 Mo. 376. (4)   The action of the trial court in refusing to give effect to the contract between the parties, evidenced both by the contract of insurance and the policy loan agreement, was a denial of the rights of appellant as guaranteed by article 1, section 10 of the Constitution of the United States and of the Fourteenth Amendment thereto and of sections 15 and 30 of article 2 of the Constitution of Missouri.   Insurance Co. v. Debolt, 16 How. 416; Los Angeles v. Water Co., 177 U. S. 575; Railroad v. Texas, 177 U. S. 66; McCullough v. Virginia, 172 U. S. 109; Havemeyer v. County, 3 Wall. 292; Chicago v. Weldon, 9 Wall. 50; Olcott v. Supervisors, 16 Wall. 678; Bank v. Board, 90 Fed. Rep. 7.

*Botsford, Deatherage & Creason* for respondent.

(1) The question of the situs of contracts in cases where the question of their validity depends upon the laws of the State where they are made does not depend upon the residence of the parties. If two citizens of Iowa and Illinois come into Missouri and buy a parcel of real estate or personal property, or make any other contract in Missouri, the contract rights of the parties are governed upon the question of the validity of the contract and its construction by the laws of Missouri, the same as if either or both lived in Missouri. Napier v. Insurance Co., 100 N. Y. Supp. 1072. (2) The contention of appellant's counsel that its offer to pay eighty-nine dollars to satisfy a liquidated indebtedness for which the judgment was given below for about $7500, and that that offer of eighty-nine dollars extinguishes plaintiff's liquidated demands, is not supported by anything in the law. 1 Cyc. 319; Wetmore v. Crouch, 150 Mo. 671. (3) The propositions of this case that the policies in suit were and are Missouri contracts and that the loan contracts of 1904 made pursuant to the provisions of the policy were not separate contracts from the policies, are amply supported. Cravens v. Insurance Co., 148 Mo. 583; Insurance Co. v. Cravens, 178 U. S. 389; Insurance Co. v. Clements, 140 U. S. 226; Whitfield v. Insurance Co., 205 U. S. 489; Smith v. Insurance Co., 173 Mo. 329; Moore v. Insurance Co., 112 Mo. App. 696; Insurance Co. v. Russell, 77 Fed. Rep. 94; Insurance Co. v. Twyman, 92 S. W. 335; Capp v. Insurance Co., 94 S. W. 734; Horton v. Insurance Co., 151 Mo. 604; Joyce on Ins., sec. 194; Napier v. Insurance Co., 100 N. Y. Supp. 1072; Burridge v. Insurance Co., 211 Mo. 158-178. Milliken v. Pratt, 125 Mass. 374; Golden v. Ebert, 52 Mo. 260; Richardson v. DeGiverville, 107 Mo. 422; Ruhe v. Buck, 124 Mo. 178; Reed v. Tel. Co., 135 Mo. 661; Elliott v. Life Assn., 163 Mo. 132; Thompson v. Insurance Co.,

169 Mo. 12; Park v. Insurance Co., 26 Mo. App. 511; Clothing Co. v. Sharpe, 83 Mo. App. 385; Pietri v. Sequenot, 96 Mo. 258. (4) The claim that the endorsement of said eighty-nine dollars by appellant on said Mary E. Head policy was the same as a paid-up policy issued under section 5857, Revised Statutes 1889, cannot be sustained. Said eighty-nine dollars was not the amount due as a paid-up policy on said Mary E. Head policy, by virtue of said section 5857, but under the evidence adduced by the appellant was the amount claimed by appellant to be the entire amount due as a paid-up policy under the laws of New York. There was no new policy issued by appellant under section 5857. Appellant cannot claim under both the statutes of New York and Missouri. (5) Equally erroneous is appellant's proposition that the loan contracts of 1904 had the effect of wiping out the policy in each one of these cases. Smith v. Insurance Co., 173 Mo. 329; Burridge v. Insurance Co., 211 Mo. 158; Christensen v. Insurance Co., 152 Mo. App. 551; Bloom v. Insurance Co., 197 Mo. 513; State v. Mer. Co., 184 Mo. 185. (6) In this case, the policies having contained provisions and stipulations for the making of loans and loan contracts, the loans and loan contracts made in these cases in 1904 cannot be considered as separate loans and loan contracts. Burridge v. Insurance Co., 211 Mo. 158; Christensen v. Insurance Co., 152 Mo. App. 551. (7) Respecting the suggestion and argument of appellant's counsel, that appellant had the right to come into Missouri and make contracts in defiance of law, we submit that the right of contract is not an unlimited, unqualified one, but is always subject to the law in force at the time of making the contract. Wilson v. Drumrite, 216 Mo. 325; Villa v. Bodrigues, 12 Wall. 339; State ex rel. v. Insurance Co., 152 Mo. 1; State v. Cantwell, 179 Mo. 245; Holden v. Hardy, 169 U. S. 366; Harness v. Insurance Co., 144 Mo. 413; Havens v. Insurance Co., 123 Mo. 403; Henry v. Evans, 97 Mo. 47.

PER CURIAM.—The following opinion by BOND, C., delivered in Division No. 1, is adopted as the opinion of the Court in Banc. All concur except· *Graves* and *Ferriss, JJ.,* who dissent.

BOND, C.—Defendant is an insurance company incorporated in New York and duly licensed to do business in the State of Missouri, and for that purpose has established a branch office in Kansas City, Missouri.

Richard G. Head made an application at the Kansas City office of the defendant for two policies of ten thousand dollars each upon his life, payable to his infant son, Richard G. Head, Jr. At the time he made this application, the assured, though born in Missouri, lived on his ranch in Watrous, New Mexico, and was a citizen of that territory. He maintained business interests in Kansas City, Missouri, and was often there attending to the same. He gave the soliciting agent of the defendant a thirty day note, payable to him personally, for an amount equal to the premiums of the two policies. Thereafter the defendant transmitted from its home office to its branch office in Kansas City a policy made out in accordance with this application, dated April 3, 1894, for a twenty year accumulation period and containing the usual stipulations, which, as far as necessary, will be specially adverted to in the opinion.

After these policies had been received at its Kansas City office, they were handed over to the soliciting agent of defendant, who delivered them to Mr. Deatherage, the attorney of the assured, who placed them in his safe, where they remained until the assured returned at the date of the maturity of the note, and took up the note by drawing a draft upon the commission company in which he was a stockholder, in Kansas City, Missouri, which draft he gave to the soliciting agent in exchange for his note, and the soliciting agent turned

it over to the cashier of the defendant in charge of its branch office at Kansas City. At this time the assured received his policies from Mr. Deatherage, who subsequently arranged with the company that the future premiums payable thereon might be sent by the assured from his place of residence in New Mexico. This was done in most instances, though some of the subsequent premiums were paid at Kansas City.

A few years thereafter the assured was appointed guardian of his infant son, and as such guardian and under proper authority from the court he assigned one of these policies, No. 599590, to his daughter, Mary E. Head. Thereafter, to-wit, April 3, 1904, upon application of Mary E. Head, in which the assured joined, the defendant made a loan of $2270, on said policy under the terms of a loan agreement, which, as far as material, will be adverted to in the opinion. The assured defaulted in the payment of premiums on said policies due April 3, 1905, whereupon certain correspondence between himself and the beneficiary, Mary E. Head, and the defendant took place with reference to the issuance of a paid up policy computed as provided by the statutes of New York. This as far as essential will be referred to in the opinion. Thereupon, the policy in suit was returned to Mary E. Head in the summer of 1905, with an endorsement thereon, that it stood as a paid up policy for eighty-nine dollars. Her father, the assured, died April 8, 1906, and she brought this present action the 20th of September, 1906, in two counts. In the first count she prayed judgment for the face value of the policy less the loan indebtedness of $2270 and five per cent interest thereon, claiming that she was entitled to that sum under the laws of Missouri. In the second count she prayed judgment on the same policy for the sum of $1430, which she alleged was its paid up value computed according to the statutes of Missouri after deducting the amount of the aforesaid note and interest.

The defendant answered, denying the payment of any premiums on the policies after April 3, 1905; admitting its incorporation and its license to do business under the laws of Missouri, and its establishment of an office in Kansas City, Missouri, for that purpose, and that it issued the two policies on the life of the assured; but averring that at the time he applied for the same, he was and up until his death continued to be a citizen of Watrous, New Mexico; that his application was accepted in consideration of the agreement, statement and warranties therein contained, which became a part of the contract embodied in the policies issued to him and which provided that the contract made by said policies and said application should be construed according to the laws of the State of New York. The answer set out the provisions of the policies as to the payment of premiums, as to the making of loans, and quoted sections of the New York statutes providing the rule and method for computing the paid up value of policies which had lapsed after being in full force three full years, and it then set out the making of a loan to the beneficiary in the policy in suit, on the 3d of April, 1904, and the deposit of the policy in suit as collateral security for that loan, and the making of a written loan agreement by the beneficiary, and its provisions, that upon default of payment of the interest on said loan or a premium on the policy, the defendant should have the right to continue the said policy without further notice as paid up insurance in accordance with the section quoted from the statutes of the State of New York; and averring that said policy did lapse for the non-payment of a premium, and that defendant exercised its option and continued it as paid up insurance for the sum of eighty-nine dollars, and endorsed it to that effect, and returned it to the plaintiff, and tendered that amount before the institution of this suit, and continued a tender therefor in its answer. The defendant made a similar defense to the second count.

Plaintiff adduced evidence tending to show, that when Mary E. Head, the beneficiary of this policy, received it with the endorsement placed thereon by defendant, she had no knowledge whatever of her rights under said policy, either under the statutes of New York or the statutes of Missouri; that she never accepted the amount tendered her by the defendant. Plaintiff adduced evidence tending to show, that at the time defendant undertook to settle the policies, as hereinbefore stated, there was, according to the rule fixed by the statutes of Missouri (R. S. 1889, sec. 5856), a balance due on said policy sufficient to furnish a single premium for temporary insurance for the full face value of the policy for several years after the death of the assured. Plaintiff also adduced evidence tending to show, that, if the policy had been settled up and a paid up policy reissued therefor according to the method and standard fixed by the statutes of Missouri (R. S. 1889, sec. 5857), the new policy would have been for a much larger sum than eighty-nine dollars.

The case was tried by the court without the intervention of a jury. At the request of plaintiff and over the objection and exception of defendant, the court gave the following declarations of law:

"1. The court instructs the court sitting as a jury that on the uncontradicted facts of the case as they appear from the evidence, the policy of insurance in this action was and is a Missouri contract governable by the laws of Missouri in force at the time of the issuance of said policy, and not governable by the laws of the State of New York.

"2. The court instructs the court sitting as a jury that on the facts shown in the evidence in this case the plaintiff is entitled to recover and that the issues should be found in favor of the plaintiff.

"3. The court instructs the court sitting as a jury that the policy sued on was kept alive by the laws of Missouri to a time subsequent to the death of Richard

G. Head, Sr., by the net value of said policy at the time of his default in 1905, and that plaintiff is entitled to a finding and judgment against defendant for the amount of said policy, or $10,000 less the sum of $2270, with interest thereon at five per cent per annum from April 3, 1905, to July 6, 1906, and less also the further sum of $425 with interest thereon compounded at six per cent from April 3, 1906, to July 6, 1906, and after so computing interest on said three last sums and the principal and interest of said sums are added together, then deduct the total amount of said three sums from said $10,000 and then the court sitting as a jury should compute interest at six per cent per annum on such balance of $10,000 so obtained from July 6, 1906, to the day of this finding and judgment, and the sum stated in the finding and judgment should be the amount of the principal and interest of such balance.''

And thereupon rendered judgment in favor of the plaintiff for $7476.21.

After the overruling of his motion for a new trial and in arrest, defendant appealed to this court, and assigns for error the giving of the foregoing instruction and the refusal of a declaration of law requested by it, that plaintiff was only entitled to recover the tender made in the answer, and that the contract contained in the loan agreement fixed the amount of plaintiff's recovery.

## OPINION.

I. It is insisted for appellant that the status of the parties and the transactions between them culminating in the contract of insurance make it the duty of this court to apply to it that interpretation and effect which it would have under the statutes of New York, pleaded in the answer of the defendant. As a basis for this position, defendant alleges, first, that the contract of insurance was not executed at defendant's business office in Kansas City, Missouri, but was completed at its home office in New York City; second, that

even if the contract had been made in Missouri, it would not be available to plaintiff since the assured was not a citizen of that State when the contract was entered into. Unless one or the other of these reasons can be sustained, the contention of appellant resting on them must be denied. It has been repeatedly ruled in this State since the enactment of sections 5856 *et seq.* of the revision of 1889 (now R. S. 1909, sec. 6946) and the Act of 1891 (Laws 1891, p. 75), Revised Statutes 1899, sections 1024 and 1026 (now R. S. 1909, secs. 3037, 3040), that foreign insurance companies admitted to carry on their business in this State, can only contract within the limits prescribed by our statutes, and that in the conduct of the business under the license granted by this State, they "shall be subjected to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers." The effect of these decisions is to write into every insurance contract made by a foreign insurance company, so licensed, in this State all of the provisions of the statutes of this State appurtenant to the making of such contract, and which define and measure the reciprocal rights and duties of the parties thereto. These statutes are declaratory of the public policy of this State, and inhibit the doing of the business of insurance in this State by any corporation contrary to their regulations, by annulling all the stipulations which offend the provisions of the statutes. [Horton v. Ins. Co., 151 Mo. 604; Smith v. Ins. Co., 173 Mo. 329; Burridge v. Ins. Co., 211 Mo. 158; Cravens v. Ins. Co., 148 Mo. 583; Ins. Co. v. Cravens, 178 U. S. 389; Whitfield v. Ins. Co., 205 U. S. 489, affirming Keller v. Ins. Co., 58 Mo. App. 557.]

II. The first inquiry is, where was the contract expressed by this policy made? The only thing done by the assured when he applied for this policy was to

fill out a blank form of application and deliver it to the branch office of defendant at Kansas City, Missouri, and to hand a note or due bill at thirty days, payable to the soliciting agent individually for an amount equal to the premiums to be charged for the policies. This application was sent to New York, and a policy in accordance therewith, based on the agreements therein contained, was returned to defendant's Kansas City office, and by one of its officers in charge handed over to the soliciting agent, who ·delivered it to the lawyer of the assured (whose office was in the building occupied by defendant).

When the assured returned to Kansas City, at the maturity of his note, he gave a draft on a commission firm engaged in business there, in which he was a stockholder, for the amount of the note, took up the note, and the draft was turned over to the cashier of the defendant. On this trip the assured received his policy from his attorney. It will be perceived that the defendant did not mail its policy to the assured from its home office in New York, but transferred the policy to its branch office in Kansas City, Missouri, where it was as much in the possession of the defendant as it would have been if it had been retained in New York. The defendant's representatives at Kansas City were necessarily invested with full power to deal with the policy as general agents of defendants in this State. Under that authority they delivered the policy to the soliciting agent, who turned it over to the attorney for the assured at that place. This act completed the contract, and rendered defendant liable according to the terms and provisions of the policy.

Under the facts of the present record, the right of the assured to the indemnity provided in the policy resulted wholly from the transactions between the parties in this State. Every step essential to the creation of a contract between them was taken in Kansas City,

Missouri—there the application was made; there, the
note was given; and, there, the policy itself was de-
livered. The obligation thus created was in all re-
spects a Missouri contract, and must be construed by
the laws of this State unless the residence of the as-
sured in New Mexico precludes him from the benefit
of the law of the State in which his contract was exe-
cuted.

III. In its regulatory statutes affecting the busi-
ness of life insurance within its borders, the State of
Missouri designed to illustrate and enforce its policy
of wholesome control over the conduct of a calling
which might otherwise be carried on in an unjust and
oppressive manner. The need of insurance facilities
is widespread if not universal. So important is this to·
the welfare and protection of the public that advanced
thinkers are asking for governmental action in the
matter of affording insurance for life and insurance
for aged working men of the community, and govern-
mental action in that respect has been taken in Eng-
land, Germany, Austria and Switzerland. The im-
portance of this subject has deeply impressed the Leg-
islature and the courts of this State, and is aptly
shown by the utterances of this court in Smith v. Ins.
Co., supra, p. 340, where VALLIANT, C. J., said: "Our
law deems the subject of life insurance one that re-
quires especial protection. . . ." Adding further,
"There is a great deal of technical learning in the sub-
ject of life insurance and our lawmakers have pro-
ceeded on the theory that the average man who takes
out a policy on his life is not equal in skill and learning
in the technicality of that subject to the experienced
officers of the insurance company, and for that reason
have written into such contracts some provisions which
the parties to them cannot avoid." These motives
have induced the Legislature to enact and make it the

duty of the courts to enforce the statutes of this State which prescribe, in some measure, the terms of any contracts and the defense thereto which a corporate insurer of lives can make in the transaction of its business in this State under a license granted and containing the limitations prescribed by our laws. There is nothing in the words of the statutes on these topics which tends to show that they were to be operative only in case of contracts made with citizens of this State, and that they were intended to be inoperative on contracts made here with any other persons properly in this State who are capable of contracting and do enter into contracts in this State. This contention of counsel for appellant loses sight of the fact that it was the purpose of the Legislature by these restrictions to prevent the *making* of contracts in this State in violation of its laws and to the injury of the general public. The laws of a State are made for the benefit and protection of all persons whether citizens, inhabitants, transients, visitors or sojourners who are properly within its borders, unless otherwise declared. The prime object of these statutes was to compel insurance companies to enter into fair and equitable contracts The power to impose these restrictions as a condition for doing business in this State is too well established to be questioned at this late day. [Whitfield v. Ins. Co., 205 U. S. 489, affirming Keller v. Ins. Co., 58 Mo. App. 557.] It was not intended that these checks upon insurance contracts should be released if the assured who entered into a contract in this State in violation of these statutes was not at the time a citizen of the State. If that intention could be supplied by construction, then it would happen that much of the business of a licensed insurance company would be conducted in this State in utter defiance of the very statutory restrictions imposed as a condition of its entrance. In the case at bar the defendant has a branch office in a

great city on the western limits of this State, which is frequented by throngs of visitors and traders from the surrounding States. If the defendant might make contracts in Kansas City with all persons not shown to be citizens of Missouri in vioation of the law under which it was admitted to do business in this State, then it would necessarily result that the chief end of the regulating statutes would be thwarted, and defendant would be permitted to use a situs secured in this State for the purpose of making contracts in accordance with its laws, for the wrongful purpose of making contracts in violation of its laws.

We do not think we should inject into these statutes words (not inserted by the Legislature) showing that they are applicable only when citizens of this State are affected. It is not a proper judicial function to import language into the body of a legislative enactment not necessarily required in order to accomplish the purpose of the act. To do this in this case would defeat the objects of the act and open the door to many of the evils which the statute sought to correct. We, therefore, rule that these acts were intended for the benefit and protection of all persons lawfully in Missouri and who obtained contracts of insurance there from a company licensed to make such contracts only in accordance with the laws of this State, and that these statutes are available for the protection of any such persons, though not citizens of Missouri, so contracting in this State. We, therefore, overrule the contention that the Legislature had an unexpressed purpose to exclude strangers within our gates from the protection of our laws.

IV. It is next insisted by counsel for appellant, that, conceding the contract expressed in the policy in suit is construed and governed by the laws of Missouri in vogue at the time it was formed, and that it

241 Mo.—27

was formed originally in Missouri, yet inasmuch as the present beneficiary in 1904 entered into a loan agreement whereby she borrowed from the defendant $2270, and wherein she agreed that the policy in question should be governed and controlled by the laws of the State of New York, that such loan agreement constituted a new and valid contract which precluded the present beneficiary from any other redress under the policy in suit than she would be entitled to if it had been settled in accordance with the laws of New York. We cannot concur in this view. It is not an open question in this State, that all subsidiary contracts made by the parties to an insurance contract are within the contemplation and purview of the original contract, and are not to be treated as independent agreements. This being so, they are inefficacious to alter, change or modify the rights and obligations as they existed under the original contract of insurance. [Burridge v. Ins. Co., supra; Smith v. Ins. Co., supra.]

V. It is next contended by counsel for appellant that the eighty-nine dollars which the evidence tended to show was the amount of a paid up policy after deducting from the value of the policy in suit all the indebtedness for loans or premiums, is all plaintiff is entitled to receive, for the reason that she requested, in conjunction with her father, that this policy might be settled out on that basis. We have held that this policy by original legal intendment was a Missouri contract and to be wholly governed, construed and controlled by the laws of this State, and that it was neither modified nor altered by the written agreement entered into at the time of the loan made in 1904. It necessarily follows that neither the tender nor payment (if it had been received) of the eighty-nine dollars would preclude the beneficiary from enforcing her rights under this contract according to the laws of Missouri if the

eighty-nine dollars was not all of the sum unquestionably due her at the time. In other words, no tender nor payment of any sum less than the full amount of an unquestioned indebtedness will bar the party from prosecuting a suit for the entire amount due. [Wetmore v. Crouch, 150 Mo. 671, 672, 682, 683; Riley v. Kershan, 52 Mo. 224; Swofford Dry Goods Co. v. Goss, 65 Mo. App. 55.]

Neither can it be urged that the eighty-nine dollars tendered to plaintiff before and by this suit as the full amount of a paid up policy under the New York law, and the fact that the policy was returned to her with that endorsement and retained for some months until after the death of her father, be held to operate as a waiver of any rights to which she was otherwise entitled. Waiver is always a question of intention and rests upon a full knowledge of all the material facts upon the part of the person against whom the defense is interposed. In the case at bar there is no evidence that the present beneficiary had any knowledge or information whatever of her rights under the contract in suit as fixed by the statutes and laws of Missouri; and, hence, there is no evidence that she should have intended to abandon the enforcement of such rights. She never accepted the amount tendered her nor did any act other than to place the policy when it was returned with the aforesaid endorsement among her father's papers, where it remained until he died, some months afterwards. The evidence clearly shows that the whole business relating to this insurance had been done by him, and that she had left the matter entirely in his hands without knowledge or inquiry or the ascertainment of her rights until after his death, when she brought the present action to enforce them.

There was ample evidence adduced on the trial tending to show that, under the section of the statutes providing for the application of a certain proportion

of its value to the purchase of extended insurance, this policy had a value sufficient to extend it for the full amount beyond the death of the assured. The declaration of law, therefore, given by the learned trial judge predicating plaintiff's right to recover the full amount of the policy under the statutes of Missouri, after making the proper deductions, was correct; and the judgment herein is affirmed. *Brown, C.,* concurs.

*Lathrop, Morrow, Fox & Moore* for appellant.

