## WASHINGTON NAT. INS. CO. v. COOK.
### No. 1365.

Court of Civil Appeals of Texas. Eastland.
Feb. 15, 1935.

Rehearing Denied March 15, 1935.

Turner, Seaberry & Springer, of Eastland, for appellant.

R. N. Grisham, of Eastland, for appellee.

HICKMAN, Chief Justice.

Upon the findings of a jury in answer to special issues, judgment was awarded to appellee against appellant for $3,000, on an accident insurance policy. Since we have determined that one question, of the many presented, is controlling, only such statement of the case will be made as throws light upon that question. One of the defenses pleaded by the appellant was as follows: "And for further answer herein, defendants. would represent and show unto the court that on or about April 15, 1931, defendants were advised by Carl Low, plant superintendent, that plaintiff was injured on March 30, 1931, by burns received by a pipe outside the engine rooms blowing out and igniting gas in pipe from blow torch. That defendants immediately got in touch with plaintiff, who filed claim for the injuries received. That plaintiff claimed damages for such injuries in the sum of Fifty ($50.00) Dollars, and represented to defendants that he had been disabled for a period of fifteen days; that he would return to work on said 15th day of April, 1931. That defendants paid the claim of plaintiff in full for such injuries, and received a full and complete release from plaintiff for such injuries. That by virtue of such facts said claim for damages has been settled in full and defendants completely released, and plaintiff is not entitled to recover herein."

If that defense is to be sustained, all other issues become immaterial. The only attack made upon the release executed by appellee was a want of consideration for its execution. The issues submitted to the jury with reference thereto, and the answers returned to these issues, were as follows:

"Special Issue No. 9: Do you find from a preponderance of the evidence that the sum of $50.00 which was paid to plaintiff by the insurance company on April 15, 1931, was paid solely on account of disability and loss of time suffered by him prior to said payment? Answer Yes or No. Answer: Yes.
"[Sgd.] D. G. Hunt, Foreman.

"If you have answered the preceding question in the negative, you need not answer the following special issue, but if you have answered same in the affirmative, then answer:
"Special Issue No. 10: Do you find from a preponderance of the evidence that there was no consideration for the release signed by plaintiff, insofar as said instrument purported to release the insurance company from liability on account of loss of time and disability that might be suffered by plaintiff in the future? Answer Yes or No. Answer: Yes.
"[Sgd.] D. G. Hunt, Foreman."

Appellee's injuries were received on March 30, 1931, from a gas explosion. In addition to external burns, his mouth and throat were seared, and the evidence supports the jury's finding that tuberculosis resulted therefrom. After the accident, he spent a few days in a hospital in Gorman and then returned to his home in Desdemona, from which he made frequent visits to his doctor at the hospital. T. J. Duncan was the local agent of appellant, through whom appellee procured his policy of insurance. Shortly after the accident, the plant superintendent of the company by which appellee was employed advised Duncan of appellee's injury. On or about April 12th, Duncan visited appellee in his home, the visit

being described in appellee's brief as "a friendly call and for the purpose of finding out how plaintiff was getting along; nothing being said by either of them about pay." Three days later Duncan again visited appellee, bringing with him a blank preliminary notice of accident to be filled out by the insured. This blank form was one evidently adopted by the appellant for use by claimants as a preliminary notice. On the reverse side of this instrument was a form for the surgeon's preliminary report. This report had been executed by Dr. Ed Blackwell, appellee's attending physician on the day before. One of the interrogatories answered by the surgeon was as follows: "How soon, in your opinion, from the date of injury, will claimant be able to perform some of his or her duties?" To which he answered, "About two or three weeks." The preliminary notice of accident executed on that day by the appellee recited in its caption that "* * * for the purpose of applying for such benefits as I may be entitled to, make answer to the following questions. * * *" One of the questions answered by the appellee in this report was as follows: "If paid at once without requiring further proofs, what number of days' indemnity are you willing to accept in full payment of claim for this injury?" To which the claimant answered, "15 days." This preliminary report was sent to the appellant's head office in Chicago. On the same day that appellee executed this preliminary report, Duncan drew a draft upon appellant as follows:

"Dept. ——— Dist. ——— File No. 506426. April 15th 1931 Washington Fidelity National Insurance Company Pay to the order of Joe E. Cook $50.00 Fifty and no/100 Dollars in settlement of claims as per receipt on back to Washington Fidelity National Insurance Company, 1607 Howard Street, Chicago, Illinois. (Signed) Thos. J. Duncan."

Appellee indorsed his name on the back of that draft, under the following release: "Received of the Washington Fidelity National Insurance Company $50.00 in full payment, satisfaction, discharge and release of any and all claims that I myself, my heirs, executors, administrators, assigns or beneficiaries now have or may hereafter have against said Company under Policy No. PC 5237 arising on account of injuries received or illness contracted on or about the 30th day of March 1931, and any loss that may hereafter result from said injuries or illness. (signed) Joe E. Cook."

This draft on its face contained, among others, the following indorsements: "Approved for payment Apr. 22, 1931 by U. S. Nat'l L. & C. Co.," and, "Paid Chk No. 27995 April 22 1931 Washington Fidelity National Insurance Company."

There was no discussion between appellee and Duncan at or prior to the time this draft was drawn as to the liability of appellant. The testimony about this matter given by the appellee himself is as follows:

"Q. At the time you received this $50.00 draft from Duncan, state whether or not in the conversation just prior to the time he gave you the draft, if anything was said about whether or not the company was liable for money on account of your injury? A. No, nothing said about it.

"Q. State whether or not Duncan said anything about the company being liable? A. No, he did not.

"Q. Was there any discussion between you on the question of liability? A. No, no occasion. I thought I was going to get well.

"Q. State whether or not anything was said with reference to the amount you would receive on account of your injury at that time? A. Yes, sir.

"Q. What was said? A. I told you awhile ago. I had three days coming and he said for me to take the $50.00 and just give him the three days to keep him from coming back and I said all right, it didn't amount to anything.

"Q. Anything more said? A. That was all.

"Q. Anything more said about the amount due you? A. That was all."

Appellee returned to his employment on April 18th, and continued therein until June 2d, thereafter, but, according to the findings of the jury, which are supported by the evidence, he was really unable to perform labor during that time, and has been continuously unable to do so since that time. His physician, Dr. Blackwell, frankly admits that, in the light of the facts as they have now developed, he was mistaken in advising his patient to resume his employment.

██ By the court's charge the burden of proving that there was no consideration for the release was properly placed upon appellee. We have concluded, not only that he failed to discharge that burden, but that, as a matter of law, this release was based upon a valid consideration. Appellee's claim was single. It did not consist of two separate de-

mands so as to make applicable the rule that the payment of one would not afford a consideration for the release of the other. The fact that there was no dispute between the parties is not controlling. There was no occasion for any dispute. No one knew the extent, or probable duration, of appellee's injuries. He and his physician were in a better position than was appellant's agent to make an estimate thereof. Dr. Blackwell was not appellant's representative, but was the physician of appellee's own choosing. The parties dealt at arms' length concerning a claim of unknown and unknowable amount. Appellee stated in his preliminary report, which was sent to appellant's home office, that, if paid at once without requiring further proofs, he was willing to accept fifteen days indemnity ($50) in full payment of his claim. A draft for $50 was drawn on appellant, on the reverse side of which was a release duly executed by appellee exonerating it from any further liability on the claim. That release could be delivered to appellant and thereby become effective only by the acceptance and payment by it of the draft. One week later it accepted and paid same and appellee received the full amount which he offered to accept for his claim. There would not have been a more definite consideration shown had the facts established a dispute as to liability. The question was not discussed and the amount collectible, if any, was unknowable at the time. That was sufficient. Great Southern Life Ins. Co. v. Heavin (Tex. Com. App.) 39 S.W.(2d) 851; Inter-Ocean Casualty Co. v. Johnston (Tex. Com. App.) 72 S. W.(2d) 583.

Further, the payment before any amount was due and the release of appellee from the requirement of the policy to furnish further proofs would alone be considerations to support the release, if so intended. It cannot be said, we think, that these benefits were not so intended.

At the time this case was tried in the lower court, there had been published an opinion by the Court of Civil Appeals at Waco, in the case of Inter-Ocean Casualty Co. v. Johnston, 47 S.W.(2d) 696, in which it was held, under facts similar to those here involved, that the release was not binding, because not supported by a valid consideration. Appellee's counsel doubtless relied upon that holding in pleading and developing their case, and the trial judge doubtless relied thereon in submitting same and rendering judgment. However, after the instant case was tried below, the Supreme Court reversed the judg-

ment of the Waco court, see Inter-Ocean Casualty Co. v. Johnson, 72 S.W.(2d) 583, and rendered judgment that the insured take nothing. The facts in that case are strikingly similar to the facts in the instant case. There are but few variations in detail, and no variations sufficient to make applicable a different rule of decision. The Court of Civil Appeals reversed that case on the issue of whether or not proofs of loss were timely made by the insured. Notwithstanding that disposition of the case, the Supreme Court granted a writ of error, and reversed and rendered the judgment, thereby determining that the question of whether proofs of loss had been furnished was immaterial; that the efficacy of the release did not depend on the existence or question of the existence of any defense the insurance company might have because of the failure of the insured to furnish proofs of loss. That holding requires a similar disposition of the instant case.

It is, therefore, ordered that the judgment of the court below be reversed and judgment be here rendered in favor of the appellant.

FUNDERBURK, Justice (dissenting).

The proper decision of this case, it seems to me, in so far as the questions presented are dealt with in the majority opinion, is controlled by three more or less fundamental propositions of contract law. They may be stated thus: First, *a promise in order to be legally binding must have been given in exchange for a consideration.* Second, *only that is a consideration which is so regarded by the parties.* Third, *the payment of a sum of money in exchange for a promise is no consideration if the money was certainly and indisputably already due at the time the promise is made.*

Properly the only question of the existence of a consideration for the release here involved is whether payment of the $50 constituted a consideration. No other consideration was pleaded. Appellant pleaded no discharge by compromise. "Accord and satisfaction" was not alleged as a defense to appellee's suit. The only defenses pleaded, as applicable to the question here, were (1) payment, (2) release. In other words, it was pleaded that appellee's claim of liability had been discharged by payment and release. The undisputed evidence showed that it had not been discharged by payment. The claim was for $3,000, and the payment was $50. If the evidence had shown the claim to be paid in full, the release would have become an immaterial matter. It would have added noth-

ing to the effectiveness of the discharge. But, the evidence showed the necessity of recourse to the release. Having failed to prove payment in full, appellee had the burden of showing a discharge by release. A release is a contract. An essential element thereof is a consideration. Appellee's burden, therefore, included proof of a consideration. The proof offered was the release which recited as a consideration the payment of $50. No other consideration was alleged. No other was proved, or attempted to be proved. Therefore, I say the inquiry should be limited to a determination of whether the $50 was a consideration.

But whether the inquiry be so limited or not, the only consideration other than payment of the $50, which the record even remotely suggests was the payment of the $50 *before it was due.* Appellant was not under legal duty to make such payment until sixty days after proof of loss. It was in fact paid the same day that proof of loss was submitted. Did the parties regard the prepayment as a consideration? If so, and the pleadings admitted proof of same, a consideration was shown. But, the undisputed evidence showed that neither party regarded the *time* of payment as contradistinguished from the fact of payment as a consideration for appellant's promise to release subsequently accruing liability. The evidence showed indisputably that the time of payment was by both parties regarded as a benefit to appellant. If so, then it was not regarded as a consideration for the release. To be such, the benefit would have had to move to the appellee. Appellant's own testimony showed that the reason for the prepayment was simply a matter of accommodation to appellant's agent, to save him the trouble of making another trip. A consideration may, of course, consist of something given or promised by way of detriment to the debtor, or benefit to the creditor, but in any case only that is a consideration which is so regarded by the parties at the time of the agreement. Missouri, K. & T. R. Co. v. Smith, 98 Tex. 47, 81 S. W. 22, 66 L. R. A. 741, 107 Am. St. Rep. 607, 4 Ann. Cas. 644; Fire Ins. Ass'n v. Wickham, 141 U. S. 564, 565, 12 S. Ct. 84, 35 L. Ed. 860.

Was the payment of the $50 a consideration? At the time the $50 was paid, appellee had already been totally disabled for fifteen days. Under the terms of the policy, if he was due anything, he was due $50. There was no dispute, and there was no ground for dispute that something was due and that the amount due was $50. He was due that $50

whether his disability ended then or not. He filed his proof of loss and had done everything which entitled him to the payment of the $50. That it was not a preliminary proof of loss is conclusively demonstrated by the fact that both parties considered—mistakenly, it is true—that all the liability had already accrued. Nothing in the evidence, as I see it, would justify an inference that any other proof of loss was thought to be necessary, or was within the contemplation of the parties. In describing what was released— *not the consideration given for the release*— there was included not only the liability which had up to the time accrued, i. e., the $50, but whatever liability, if any, that might thereafter accrue. "A owes B a liquidated and undisputed debt of $100. B has also another claim against A, the existence or amount of which is honestly or reasonably disputed by A. A pays B $100 in return for B's agreement to accept the payment, in full satisfaction of both claims. There is not sufficient consideration for B's agreement since A has paid only what he was under a duty to pay." Restatement of the Law of Contracts, p. 85. This illustration is applicable to the facts of this case. This case is like the one supposed in that one claim was liquidated and undisputed; it is unlike it in that there was at the time no dispute, or ground for dispute, of the other claim—being the one in suit. Such difference would show even more certainly applicable, if possible, the principle involved. It would not be applicable if at the time the $50 was paid the claim had been for $3,000. The policy contract in question in practical effect created a liability for lost time. When the $50 was paid, liability for fifteen days lost time had accrued. If at that time it had been recognized that there would be liability for lost time in the future, such liability certainly had not accrued. Nothing was then due because thereof, and there could be no contention that there was. Therefore, the result is the same, so far as the question under consideration is concerned, as if the claim which was discharged by payment of the $50 was a separate and distinct claim from that subsequently accruing, and which is involved in this suit.

Let us consider another illustration. A insures B against sickness, agreeing to pay $7 per week, for each week B is sick in bed attended by a physician. B gets sick and is in bed several weeks attended by a physician. There is no dispute, or ground for dispute, either as to liability, or the amount to be paid. At the end of, say the fourth week, A calls

to pay the $7 due for that week. B suggests that this is perhaps the last week, as his physician has said that on tomorrow he will discharge the case and B can get up. A then pays the $7 due for the fourth week, and B signs a release of all liability accrued, or which may thereafter accrue. Next day, however, when the doctor calls, an overlooked material effect of B's illness is discovered, which will require him to remain in bed for several weeks longer. To say in such a case that the amounts paid, and upon payment of which the release was executed, constitutes a consideration for the release of liability thereafter accruing is to deny principles of law that should be regarded as elementary. It is a denial that a promise in a contract must be supported by a consideration. In no respect that I can see is the instant case any different from the one just supposed. In both cases nothing was paid except what was certainly due, and the insurer suffered no possible detriment.

In my opinion, the claim involved in this suit should be regarded as a liquidated demand. Given all other relevant facts, except the amount of the claim, the amount is certainly fixed and determinable as a matter of simple calculation. If in that view the claim that was paid and the one in suit be regarded as but different parts of a single claim, the undoubtedly sound legal proposition would apply that where a claim is liquidated and undisputed the payment of a part thereof will alone afford no consideration for a release of the part not paid.

But, in my opinion, it is immaterial whether the claim in suit be regarded as liquidated or unliquidated. The release of an unliquidated claim requires a consideration just as surely as the release of a liquidated claim. As said by the Supreme Court in Gulf, C. & S. F. Ry. Co. v. Gordon, 70 Tex. 80, 7 S. W. 695, 697, "To constitute an accord and satisfaction it must appear that the appellee agreed to receive something in place or stead of the *unliquidated* sum which he conceived himself entitled to receive from the appellant on account of his injuries, and that this had been paid." (Italics ours.) Appellee received nothing by way of benefit for the claim in suit since the $50 he did receive was for a liquidated and undisputed amount due him for loss of time prior to the period for which loss of time is claimed in this suit. By reason of the natural division in the entire liability under the policy into the two parts, and the clear distinction between the two claims for loss of time for different periods, the

above example in the Restatement of the Law of Contracts applies to this case, if the claim in suit be for an unliquidated sum, and compels the conclusion, I think, that there was no consideration. If the conclusion is not warranted that as a matter of law the undisputed evidence showed a want of consideration, then undoubtedly, it seems to me, the question was one of fact and was, therefore, foreclosed by the verdict in favor of the judgment rendered. This conclusion is supported by many decisions of the courts in this state, as well as other states, and of the United States, of which it is deemed sufficient to cite the following: Woodall v. Pacific Mut. Life Ins. Co. (Tex. Civ. App.) 79 S. W. 1090, Fidelity & Cas. Ins. Co. v. Mountcastle (Tex. Civ. App.) 200 S. W. 862; First Texas Prudential Ins. Co. v. Connor (Tex. Civ. App.) 209 S. W. 417; Franklin Ins. Co. v. Villeneuve, 25 Tex. Civ. App. 356, 60 S. W. 1014; Humphrey v. McCarty (Tex. Civ. App.) 251 S. W. 609, affirmed (Tex. Com. App.) 261 S. W. 1014, 1015; Columbian, etc., Ins. Co. v. Dixie, etc., Mail Order House (Tex. Civ. App.) 261 S. W. 174; Columbian, etc., Ins. Co. v. Dixie, etc., Mail Order House (Tex. Com. App.) 276 S. W. 219; Bergman Prod. Co. v. Brown (Tex. Civ. App.) 156 S. W. 1102; Simmons Hardware Co. v. Adams (Tex. Civ. App.) 147 S. W. 1196; Clifton v. Foster (Tex. Civ. App.) 20 S. W. 1005; Baker v. Coleman Abst. Co. (Tex. Civ. App.) 248 S. W. 412; Wilson v. Duncan (Tex. Civ. App.) 269 S. W. 239; Nat. Surety Co. v. American Finance Co. (Tex. Civ. App.) 41 S.W.(2d) 66; Lone Star Canal Co. v. Cannon (Tex. Civ. App.) 141 S. W. 799; Oviett v. Warner (Tex. Com. App.) 288 S. W. 434; Nat. Protective Legion v. Stevens (Tex. Civ. App.) 258 S. W. 487; Greer v. Hunt County (Tex. Com. App.) 249 S. W. 831; American Nat. Ins. Co. v. Teague (Tex. Com. App.) 237 S. W. 248; Johnson v. Hoover & Lyons (Tex. Civ. App.) 165 S. W. 900; Fire Ins. Ass'n v. Wickham, supra; Buel v. Kansas City Life Ins. Co., 32 N. M. 34, 250 P. 635, 52 A. L. R. 367; Biddlecom v. General Accident Ins. Co., 167 Mo. App. 581, 152 S. W. 103; Dodt v. Prudential Ins. Co., 186 Mo. App. 168, 171 S. W. 655; Head v. New York Life Ins. Co., 241 Mo. 403, 147 S. W. 827; Wetmore v. Crouch, 150 Mo. 671, 51 S. W. 738; Spencer v. Farmers' Mutual Ins. Co. (Mo. App.) 65 S.W.(2d) 665. Some of the authorities go no further than to support the proposition stated in 1 Tex. Jur. 260, § 15, as follows: "* * * It is well settled—elementary in fact—that the mere payment of a part of a liquidated claim is no consideration to support an accord and satisfaction." As already shown, that prop-

osition is not applicable to the instant case, unless it be considered that but one claim is involved and that it is liquidated.

As said before, I think two claims are involved, both liquidated, but that whether the one in suit is liquidated or not is immaterial. Of the cases above cited, which most strongly support this view, are Woodall v. Pacific Mutual Life Ins. Co., supra; Fidelity & Cas. Ins. Co. v. Mountcastle, supra; Fire Ins. Ass'n v. Wickham, supra; Buel v. Kansas City Life Ins. Co., supra, and the authorities cited in the latter case.

But for the opinions in Inter-Ocean Cas. Co. v. Johnston (Tex. Com. App.) 72 S.W.(2d) 583, and Great Southern Life Ins. Co. v. Heavin (Tex. Com. App.) 39 S.W.(2d) 851, relied upon by appellant, and evidently deemed conclusive in the majority opinion, I would consider the question at issue as not especially difficult. There are important differences between this case and either of those. Between this case and the Johnston Case there are at least these differences: (1) The statement of that case shows the proofs of loss which were required by the policy to be furnished within three months after injury as a condition precedent to any liability were not so furnished until four months, while in the instant case proof of loss was made in due time; (2) the written proposition of the insured to accept the $23 in full discharge of all liability imported a *compromise*, and the release expressed that the payment was in *compromise*, while in the instant case there was no evidence, oral or written, that the $50 was paid and accepted in compromise, but, on the contrary, the mutual belief of the parties that no other claim existed rebutted any presumption of the compromise of a disputed claim, and the release recited that the $50 payment was "in full payment, satisfaction, discharge and release." It manifestly did not necessarily imply a compromise.

The instant case differs from the Heavin Case in these material respects: (1) The $50 in this case was due and undisputed regardless of whether anything else would ever be due. On the contrary, the $35.10 in the Heavin Case was never due if the $3,000, or anything else whatever, was due, or could ever become due; (2) the claim asserted in this case subsequent to the payment of the $50 *was in addition to and not alternative to* the $50, while in the Heavin Case the subsequent claim of $3,000 was a denial that the $35.10 was ever due. In other words, according to the policy in the Heavin Case, under no condition could the $35.10 and the $3,000 both be

due, because if one was due the other could not be due; (3) the $50 in this case could alone constitute no consideration, because appellant was already under the contractual duty to pay same in all events, while payment of the $35.10 in the Heavin Case was (a) full payment of the policy obligation, and, therefore, in itself a complete discharge from all liability independently of any question of release or consideration, or (b) if not a payment in full, it was a sum which the insurer was not liable to pay, but which nevertheless was paid and accepted in exchange for a complete release of all liability and was, therefore, under all authorities a legal consideration for the release. In the Heavin Case, the court held the beneficiary of the insured could not defend on the ground of no consideration for the release when, if the $35.10 she had received had not completely paid the insurer's obligation, it was as a matter of law a consideration to support the release. There being a consideration, there could be no recovery upon the claim asserted, unless the release was avoided by fraud or mistake, which not being shown required a judgment for the insurer. There is wholly absent from the opinion any suggestion of an intention to overrule Woodall v. Pacific Mutual Life Ins. Co., supra, and the other cases cited in the opinion, under the different state of facts in the instant case, deemed controlling.

Under the facts detailed, is it the duty of this court to regard the decision in the Heavin Case as having declared that a written release can never be avoided on the ground of want of consideration, but that it must be avoided, if at all, on the ground of fraud, accident, or mistake? It must be so construed if it is to rule the decision in this case. If that opinion could be construed as so holding, which I think it properly cannot, it would be pure dicta, since, as already shown, there was undoubtedly a consideration.

The next question is whether the Johnston Case should be regarded as any more authoritative than the Heavin Case, or even as intended to overturn the decisions hereinbefore cited. The Heavin Case was said to be determinative of the question of want of consideration in the Johnston Case. It was determinative if Johnston had failed for more than three months after his injury to file proof of loss, which the statement of facts showed was the fact. The court devoted little discussion to the question of consideration, and probably for the reason that the very fact the Court of Civil Appeals had reversed the case on a question of whether

proofs of loss had been filed in time showed that a dispute about that matter, settled by payment of the $23, was an all sufficient consideration. It is unreasonable to believe, I think, since such construction is not necessary, that in the Johnston Case it was intended to deny the validity of the third proposition set out in the beginning of these remarks, which certainly would be the case if it requires the conclusion reached by my associates in this case.

There are other important questions presented in the appeal, which have not been discussed in the majority opinion because of the conclusive nature of the decision upon the question of consideration. It is not deemed necessary for me to enter into a discussion of these questions. Suffice it to say that a careful study of same has convinced the writer that none of them require a reversal of the case, except one complaining of the argument of counsel. A discussion of even that point, which would require a reversal and remand of the case, will be omitted as unnecessary under the circumstances.