INTER-OCEAN CASUALTY COMPANY V. A. C. JOHNSTON.

No. 6266. Decided June 19, 1934.
Motion for rehearing overruled October 24, 1934.
(72 S. W., 2d Series, 583.)

*George K. Holland,* of Dallas, for plaintiff in error.

Johnston was not entitled to recover anything as against the insurance company, because on or about May 12, 1925, about four months subsequent to the alleged accident and about a year and a half before Johnston filed this suit, he and the insurance company entered into a valid and binding agreement of release, upon a good and sufficient consideration from the insurance company to Johnston, whereby all claims accrued or to accrue to Johnston against the insurance company on account of the alleged accident were fully satisfied, compromised and finally settled. Grand Fraternity v. Melton, 102 Texas, 399, 117 S. W., 788; Houston T. C. Ry. Co. v. McCarty, 60 S. W., 429; National Cas. Co. v. Mahoney, 296 S. W., 335; Quebe v. Gulf, C. & S. F. Ry. Co., 98 Texas, 6, 81 S. W., 20.

*Weatherby & Rogers,* of Waco, for defendant in error.

Since under the policy the company was liable in any event, for the hospital and surgical fees, and it paid nothing else for the purported release, and no attempt was made to settle for any thing else; such release, as to injuries unknown at the time to either party, and not in contemplation of either party, was not binding. And since in his letter insured stated that he had no claim except for hospital and surgical fees of $23 in full of "his claim"; such letters constituted the contract; and the endorsement on the draft sent in payment was nothing

but a receipt for the money. American Natl. Ins. Co. v. Jarrell, 50 S. W. (2d) 875; Great So. L. Ins. Co. v. Heavin, 39 S. W. (2d) 851; Fidelity & Cas. Co. v. Mountcastle, 200 S. W., 862; 1 Tex. Jur. 26.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

The opinion of the Court of Civil Appeals which is found at 47 S. W. (2d) 696, makes a full and fair statement of the facts and issues of this case. We refer to and adopt that statement. In order that this opinion may be complete within itself we make the following statement:

This suit was instituted in the District Court of McLennan County, Texas, by A. C. Johnston against Inter-Ocean Casualty Company, a corporation, to recover on an accident insurance policy. Trial in the district court with a jury resulted in a verdict and judgment for Johnston, for $2,400.00 insurance, less $23.00 paid; $723.00 interest; $285.00 penalty, and $750.00 attorneys' fees. This judgment was reversed and the cause remanded by the Court of Civil Appeals. Both parties bring error.

The suit is based on an accidental insurance policy issued by the Casualty Company to Johnston. The policy insured Johnston, subject to all of the conditions and limitations therein, against "The effect resulting directly and exclusively of all other causes from bodily injuries sustained during the life of the policy through external, violent and accidental means, (excluding suicide, sane or insane), said bodily injuries so sustained being hereinafter referred to as 'such injury' as follows:"

Paragraphs (B), (C), (F) and (J) of the policy are as follows:

"MONTHLY ACCIDENT INDEMNITY.

"(B)   The Company will pay 'Monthly Accident Indemnity' at the rate per month specified in Part One against total loss of time, while under the care of and attended by a legally qualified physican or surgeon, not exceeding two years, resulting from 'such injuries' as immediately and continuously from the date of accident wholly disable and prevent the insured from performing any and every kind of work or business; Provided, however, that no indemnity shall be payable under this paragraph for disability resulting from any loss covered by Paragrap 'A' above.

### "PARTIAL ACCIDENT INDEMNITY.

"(C)   Or, if 'such injuries' shall immediately, wholly and continuously, from date of accident, disable and prevent the insured from performing at least one-fourth of the important daily duties pertaining to his occupation, or in the event of like disability not immediately following injury, but within thirty days of the date of 'such injury', the company will pay the insured for the period of such disability, not exceeding six (6) consecutive months, one-half of said 'Monthly Accident Indemnity,' as specified in Part One; provided, the combined period for which indemnity shall be paid for total and partial disability described in paragraphs 'B' and 'C' hereof, shall not exceed two years; provided, also, that partial indemnity shall not be payable for disability resulting from any loss covered under paragraph 'A.' "

"   *   *   *   *   *

### "SURGICAL OPERATIONS.

"(F)   If injuries are sustained by the insured necessitating surgical treatment, but not resulting in death or other disability under this policy, the Company will reimburse the injured for the cost of such treatment not to exceed a single benefit for one week, provided due proofs are filed within 90 days after the event causing the injury."

"   *   *   *   *   *

### "HOSPITAL INDEMNITY.

"(J)   In the event of the insured being admitted to any hospital for treatment, the Company will, upon satisfactory proof that he is entitled to accident benefits, and upon request, guarantee the expense of such treatment equal to the amount of monthly benefit; the amount actually paid to be deducted from the amount of benefits due the Insured."

It appears that on January 3, 1925, while the above policy was in force, Johnston was injured in a collision between the automobile in which he was riding and another automobile. Johnston was immediately carried to an emergency hospital where he was treated by a physician for a scalp wound. The Casualty Company had nothing to do with selecting the physician. The physician who treated Johnston informed him that his injury was a scalp wound, and that it was not serious. Johnston was a practicing attorney, and returned to his office the next day, and carried on his work as such for several months. On Feb-

ruary 5, 1925, Johnston wrote the Casualty Company the following letter:

"JOHNSTON AND HUGHES
ATTORNEYS
Albert C. Johnston
John A. Hughes
First State Bank Bldg.
Waco, Texas.

February 5, 1925.

"Inter-Ocean Casualty Company,
"Cincinnati, Ohio.
"Gentlemen:
"Under policy number 255314. I wish to notify you of an accident to me on January 3rd, when I was run into by an automobile. A gash in my head was sown up at a local sanitarium, but so far I have lost no time from my work because of the accident, and at the present, have no claim except for the hospital and surgical fees, and hope to never have because of this accident. Please send blanks for filing claim. * * * *
"Yours truly,
(Signed)      "Albert C. Johnston."

Johnston testified as follows with reference to the circumstances surrounding the writing of the above letter.

" * * * I did advise the company in my letter of Feb. 5th, that this gash on my head, the scalp wound, was the extent of my injury and I had no other claim so far as I knew at that time, that's what I said in the letter. I was not aware of any other claim I had on that date. All the information I had at that time was contrary to any other claim on my part, and based on what the doctor said about it, I stated that was all the claim I had. When I wrote the letter of Feb. 5th, I intended to advise the company of the accident and asked them for the necessary papers and told them that so far as I knew I had no other injury. I told them that I had lost no time from my work, and all these statements were true at that time, so far as I knew."

On May 9th, 1925, more than four months after the accident, Johnston wrote the Casualty Company another letter. It is as follows:

"Waco, Texas, May 9, 1925.

"Inter-Ocean Casualty Company,
"Cincinnati, Ohio.
"Gentlemen:
"I enclose herewith the blank which you sent me to be

filled out because of the accident to me on January 3rd. If paid promptly, I will accept the amount of the Colgin Hospital fee of $23.00 in full settlement of this claim, and will appreciate your kind and prompt attention to the matter.

"Yours truly,

"Albert C. Johnston."

Johnston enclosed in the above letter the hospital account for $23.00. Also he enclosed a preliminary notice of his accident. This is the "blank" mentioned in the letter. This preliminary notice, among other things, contained the following:

"I, _____, insured in the Inter-Ocean Casualty Company, Cincinnati, Ohio, having become disabled by reason of accidental bodily injury, for the purpose of applying for such benefits as I may be entitled to, make answer to the following questions, which answers I hereby warrant to be absolutely true and correct without evasion or reservation, and I am willing to testify under oath thereto if required.

" *   *   *   *   *   *

"3. When did you quit work entirely? Not at all (except for a few hours). 19___ Hour_____M."

" *   *   *   *   *   *

"5. What external and visible marks of such injury were there, if any? Cut on head."

" *   *   *   *   *   *

"10. When do you expect to begin, or when did you begin to perform (a) any work? The next Monday morning, (b) All of your work? Yes."

"11. What are you willing to accept in full for this claim? Surgeon's fee of $23.00."

" *   *   *   *   *   *

"17. (a) Have you been attended by a doctor during past five years? Yes. (b) When and for what? For accident to foot and ankle, in 1924."

" *   *   *   *   *   *

"20. What is your surgeon's name? Dr. I. E. Colgin. Address: Colgin's Sanitarium, Waco, Texas."

On May 12, 1925, the Casualty Company wrote Johnston the following letter:

"May 12, 1925.

"Mr. Albert Caldwell Johnston,

"First State Bank Bldg.,

"Waco, Texas.

"Dear Sir:

"We duly received yours dated May 9, with inclosures, and we are more than pleased to allow you the sum of $23.00, in full settlement of your claim.

"Inclosed you will find our draft to your order for this amount, and we trust you will appreciate our promptness in making settlement, immediately after receipt of claim papers.

"Very truly yours,

"Manager Claim Department."

Enclosed with the above letter was a check signed by the Casualty Company payable to Johnston and drawn on a bank for $23.00. On the back of this check appears the following receipt and endorsement:

"RECEIPT AND ENDORSEMENT.

"Received above balance being in full satisfaction, compromise and final settlement of all claims accrued or to accrue against Inter-Ocean Casualty Company, Cincinnato, Ohio, on account of any accident already sustained and any disease and any illness heretofore contracted.

"(Signed)      Albert Caldwell Johnston

---

"Claimant will sign and endorse above this line.

"Pay to order Colgin Sanitarium.

"Albert Caldwell Johnston.

"Pay to the order of The Provident National Bank, Waco, Texas.

"The Colgin Hospital and Clinic,

Per Ethel Sanford, Regy.

"Paid through Cincinnati Clearing House May 29, 1925.

"First National Bank.

On January 1st, 1927, Johnston filed suit against the Casualty Company. The original petition is not in the transcript. On January 22, 1931, Johnston filed his First Amended Petition. By his amended petition Johnston sought recovery for the monthly accident indemnity provided in Paragraph (B) of the policy above quoted. In the alternative Johnston sought recovery under Paragraph (C). By his pleadings and evidence Johnston contended that he was badly injured in the accident of January 3, 1925, and that he did not know the extent of his injuries at the time he executed the letters and other documents above quoted.

The Casualty Company answered, setting up various de-

fenses. Only one of such defenses needs to be discussed in this opinion.

■ The Casualty Company contended in the trial court that the record we have recited showed as a matter of law a complete accord and satisfaction of all its liability on the policy made the basis of this contract. The trial court overruled this contention. The ruling of the trial court as to this matter was sustained by the Court of Civil Appeals. This ruling of the Court of Civil Appeals is presented by the Casualty Company as error in this court. In our opinion the facts above detailed show, as a matter of law, that Johnston made a complete and valid settlement with the guaranty company for all claims had against it by reason of the injury received by him on January 3, 1925.

If we properly interpret its opinion the Court of Civil Appeals holds that there was no accord and satisfaction of Johnston's claim for injuries for three reasons, (1) because there was no consderation for same, (2) because the injuries made the basis of this suit were not contemplated by the settlement, and (3) because there was such a mistake of fact by the parties as to the nature and extent of the injuries as would authorize a court of equity to avoid the settlement. We think all of these rulings should be overruled.

The Court of Civil Appeals seems to base its holding that there was no consideration for the settlement on the theory that the Casualty Company was bound to pay the amount of the surgical and hospital fees whether the insured was entitled to accident benefits or not. This theory was expressly rejected in principle in the case of Great Southern Life Insurance Co. v. Heavin, 39 S. W. (2d) 851 (Com. App.).

In the Heavin case, supra, the suit was on a life insurance policy for $3,000.00. The policy contained a clause limiting the liability of the company to the amount of the premium paid in case the insured died by his own hand within two years from the date of the policy. The insured had paid the sum of $35.10 in premiums at the time of his death. He died in less than two years from the date of the policy. The company contended that the insured died at his own hands, and therefore it was only liable to pay back the premiums paid, $35.10. The beneficiary accepted the $35.10 in full settlement of all claims on the policy. Later the beneficiary brought suit on the policy, contending that the insured did not die by his own hand, and that there was no consideration for the settlement because the insurance company was liable in any event to pay the $35.10

paid by it on the settlement. Judge Short, speaking for Section B, of the Commission, expressly rejected this contention, and held that there was a legal and valid consideration for the settlement. The opinion was expressly approved by the Supreme Court. Said holding settles the issue of want of consideration involved in this case adversely to Johnston.

■ The holding of the Court of Civil Appeals to the effect that the parties did not contemplate a settlement of the injuries here sued for seems to be based on the theory that at the time the settlement was made neither Johnston nor the Casualty Company knew the extent of Johnston's injuries. In this connection the Court of Civil Appeals points out that both parties thought that the only liability of the company was for the hospital fees. We think the record we have quoted shows beyond any doubt that the parties intended to settle, and did settle, all claims against the company. In this respect the release recites that it settles all claims "accrued and to accrue * * * * on account of any accident already sustained," etc. The letter written by Johnston on May 9, 1925, and the formal release signed by him demonstrate beyond any doubt that he intended the $23.00 paid by the company and received by him as full "satisfaction, compromise and final settlement" of all claims he had against the accident company on account of the accident of January 3, 1925.

■ The Court of Civil Appeals, among other authorities, cites 23 R. C. L., p. 390, in support of its ruling that this release should be avoided by a court of equity because of a mistake of fact between the parties as to the nature and extent of Johnston's injuries. We think this authority upholds, rather than rejects this settlement. We deem it proper to here quote this authority in full. It is as follows:

"MISTAKE.

"In General.—The subject of mistake as affecting the validity of contracts in general is fully treated in another place. As applied to releases, much confusion exists regarding the right of an injured person who has released his claim for personal injuries to avoid the release either in equity or in an action at law to recover for the injuries, on the ground of mutual mistake as to the extent or nature of the injuries. In some cases, the court has undertaken to apply a general rule or principle of law, and decisions have thereby resulted which are arbitrary and unjust, in their application to the concrete

case presented, and the result has been to sustain a release although it was clear from the surrounding facts and circumstances, the consideration paid, and the character of the unknown injury, that the purpose of the release was to compensate for known injuries in the contemplation of the parties at the time, and that the probable existence of an unknown serious injury did not enter into consideration. The language used in disposing of some of the cases indicate that the court intended to hold that in and of itself mistake is not a sufficient ground for the avoidance of a release, but that fraud, overreaching, or undue influence must be shown, though this has been held to be a doubtful limitation of the rule. Relief has been denied on the ground that a mistake as to the extent or existence of personal injuries is one of opinion, and not of fact. While this holding may be correct in some cases, in a majority of them the mistake relates either to the existence of injuries unknown at the time the release was executed, or it is a mistake as to the extent of the injuries, due to the existence of unknown conditions. A mistake of this character, therefore, should justify the rescission of a release executed under the belief that injuries are trivial when as a matter of fact they are serious, where it appears that the purpose of the release was to compensate for apparent injuries, and that serious injuries were not in the contemplation of the parties, although in its terms the release is broad enough to cover all injuries resulting from the particular accident. However, if a person enters into a contract to release his claims for damages for injuries, ignorant of the facts which may affect such injuries, and meaning to waive all inquiry therein and investigation thereof, any mistake or mistakes with reference thereto is not a mistake in a legal sense. And it may be conceded that when the parties deal at arms' length, and the injured person has independent advice, then it may be a sound rule to adopt that a general release for injuries received in a particular accident, not specifying the particular injuries, is binding and includes injuries unknown at the time of the release."

It will be noted that the rule announced by the above quoted authority expressly says:

"However, if a person enters into a contract to release his claim for damages for injuries, ignorant of the facts which may affect such injuries, and meaning to waive all inquiry therein and investigation thereof, any mistake or mistakes with reference thereto is not a mistake in a legal sense. And it may be conceded that when the parties deal at arms' length,

and the injured person has independent advice, then it may be a sound rule to adopt that a general release for injuries received in a particular accident, not specifying the particular injuries, is binding and includes injuries unknown at the time of the release."

The parties to this settlement cleverly dealt with each other at arms' length. Jonhston made an offer of settlement which covered all liability of the company for injuries arising out of his accident of January 3, 1925. The company formally accepted the offer, and required a full and complete written contract of release as a condition to the payment of its check. Johnston executed this full release and cashed the check. The company made no investigation of its own but accepted Johnston's word. The transaction as a whole shows that the company's acceptance of Johnston's offer was on condition that Johnston execute a full release for all claims, accrued and to accrue, arising out of the accident. Clearly such facts bring this case under the rule which applies to a settlement between parties who deal at arms' langth.

Also we think this record clearly shows that even if Johnston did enter into the release of his claim for damages ignorant of the full nature and extent of his injuries, nevertheless both parties fully intended that the settlement and release should cover all claims Johnston had against the company on account of the accident of January 3, 1925. This conclusively appears because Johnston made a proposition of full settlement. The company accepted the proposition without any investigation on its part, and Johnston executed a full release which in express terms covers a final settlement of all claims *"accrued or to accrue, * * * * , on account of any accident already sustained."* There is no statement in the release showing or tending to show that it was only intended to cover hospital fees. To the contrary the release by its express terms settles all claims *"accrued and to accrue."* Under no rule of law can it be said that this release only covers hospital fees already accrued at the time it was executed. Also such a record shows that the company entered into the settlement meaning to waive all inquiry into the extent of Johnston's injuries.

We express no opinion on the other law questions presented in this appeal. They become immaterial by reason of our rulings on the issue of accord and satisfaction.

The judgments of the Court of Civil Appeals and District

Court are both reversed and judgment here rendered for the Casualty Company.

Opinion adopted by the Supreme Court. June 19, 1934.