METROPOLITAN LIFE INSURANCE COMPANY *v.* GLASSMAN

[No. 28,210.   Filed December 11, 1946.   Rehearing Denied
February 25, 1947.]

*Bomberger, Morthland & Royce,* of Hammond, *George F. Stevens,* of Plymouth and *Harry Cole Bates,* of New York City, N. Y., of Counsel, for appellant.

*James P. Gleason* and *Francis G. Feddler,* both of Michigan City, and *Marshall F. Kizer,* of Plymouth, for appellee.

O'MALLEY, J.—The appellee was the named beneficiary in a policy of insurance issued by the appellant to Elmer T. Krueger, who, in his lifetime, was the husband of appellee. This policy, by its terms, bound the appellant to pay to the beneficiary the sum of $1000.00 upon the death of Elmer T. Krueger from any cause. It also had attached thereto what is sometimes called a "double indemnity rider" by the terms of which the beneficiary would receive an additional sum of $1000.00 if the death of the insured resulted in consequence of bodily injury effected solely through external, violent and accidental means.

The issues formed by the complaint and answers narrowed the points in dispute to three questions as follows: 1. Was the death caused by accidental means? 2. Did payment of the death claim on the main policy constitute payment so as to defeat the right of action on the double indemnity rider? 3. Did the failure of the jury to follow an instruction of the court constitute reversible error?

The evidence was to the effect that the decedent was the husband of the appellee; that he died on June 23, 1943; that appellee and the decedent resided in a flat on Willard Avenue in Michigan City, Indiana, during all of their married life excepting a period of

15 months; that he left the flat at a quarter to nine on the morning of his death; that the flat was over a grocery store; that there was a back porch to the flat on which decedent kept his bicycle; that he worked at the post office for more than 20 years; that he went to the post office by bicycle or automobile; that he kept his automobile in a double garage to the rear of his flat; that the stall in which he kept his car was 19 feet 4 inches long, 9 feet and 9 inches wide and 10 feet high; that it had a service door 6 feet 6 inches high and 2 feet 7 inches wide and had a large door through which the car was driven; that on leaving he bade the appellee "good bye" in the kitchen of the flat; that before leaving he kissed her; that about one hour after he left his flat the postmaster called and stated that he had not yet arrived; that some time after the phone call, the appellee went out the back door of the flat and to the service door of the garage; that she noticed the door of the garage was open and bluish smoke was coming out; that she then ran for help; that the man who was called, entered the garage through the service door and opened the large doors at the other end; that at that time the car engine was not running but the ignition key was turned on; that the left front door of the car was open and a small box of matches and a package of cigarettes were on the front seat; that the decedent was on the floor of the garage when found; that the man who was summoned took hold of the shoulders of the decedent and permitted the feet to drag and thus moved the body out into the alley to a grassy spot; that decedent's brother and others then came and resuscitation was attempted; that at the time that they

were attempting resuscitation there was a bruise or red mark on the forehead of the decedent; that there were cinders in his mouth and scratches on his hands; that the floor of the garage was of cinders and dirt; that the face of decedent was dirty from its contact with the floor; that when found the head of the decedent was toward the rear of the car and the feet were about even with the open front door thereof; that the decedent had been short in his stamp account and had paid a sum in excess of $300.00 to make up for the shortage about a month before his death; that the day before his death his stamps were inventoried and found short in excess of $900.00; that he said he had not taken any money or stamps; that he did not know how there could be a shortage but that he was satisfied with the inventory; that subsequent to his death the government paid his salary to the appellee and later paid her the amount due him from the pension fund; and that there were no deductions taken from that amount.

It further appeared from the evidence that he and his family owned the real estate where he and his brother lived, a part of which was rented to mercantile establishments; that he was 43 years of age and in good health; and that in the year 1937, he had been overcome with fumes from a gas heater in the bathroom of his flat.

While three questions are raised, the appellant has waived questions number two and three and the one question to be determined is whether or not there was evidence from which death by accidental means could be inferred.

From the evidence of a bruised forehead, the cinders in the mouth of the decedent and the scratches on his hands, the jury could have inferred that he violently

came in contact with the floor of the garage and attempted to arise. Of course the hands may have been scratched in moving the body, but the jury may not have so believed. Even if the hands were scratched in the moving, that would not remove the effect of the evidence of the bruise on the forehead or the cinders and dirt in the mouth, which would be sufficient for the jury to infer a fall if not an attempt to arise. It was admitted that the death was caused by the carbon monoxide fumes from the engine exhaust, and if the decedent fell and as a result was overcome while on the floor, the liability of the appellant on the double indemnity feature would be fixed. Evidence of a character somewhat weaker than in the present case was held sufficient to show a fall and an accidental death in *Chicago & Eastern Illinois Ry. Co.* v. *Whipking* (1933), 96 Ind. App. 167, 170 N. E. 548.

While the evidence was circumstantial, it was not necessary to guess as to the cause of death. It is true there were two inferences possible, one of which would lead to the conclusion of accidental death and one to suicide. If we were to say that the jury was not at liberty to adopt that inference which to them seemed proper under the evidence, we would narrow the rule so that recovery could be had only when the evidence was so conclusive that only one inference could be reached by reasonable men.

Under our system, it was for the jury to decide which of the two or more possible inferences was proved by a preponderance of the evidence. The question of the credibility of witnesses and the weight of conflicting evidence were for the decision of the trial court. *Town of St. John* v. *Gerlach* (1926), 197 Ind. 289, 150 N. E. 771.

By its verdict, the jury must have determined that the death of the decedent was caused by accidental means. In this court, we cannot do more than determine whether or not the verdict is supported by the evidence. This we have done. We have likewise examined each authority submitted by the appellant. It insists that *Prudential Ins. Co. of America* v. *Van Wey* (1945), 223 Ind. 198, 59 N. E. (2d) 721, is determinative of the instant case. However, we are not in agreement with that contention. The Van Wey case decided that there must be some evidence from which a jury can draw a legitimate inference of the cause of death. It was there held that there was a total lack of evidence on the cause of death as it applied to the question at issue, which was whether or not the death was caused by accidental means. Furthermore, in that case it was indicated that slipping or stumbling or a like fact would make a difference in the result. Reliance is also placed on *Orey* v. *Mutual Life Insurance Co. of N. Y.* (1939), 215 Ind. 305, 19 N. E. (2d) 547, where this court held there was some evidence from which death by accidental means might be inferred by the jury, although that evidence consisted of a statement of a doctor that the injury showed it must have been caused by a blow or fall of some sort. In effect that case decides that if there is some evidence upon which an inference of the cause of death might be based, the matter is for the determination of the jury. It is true that it is also stated that there cannot be a decision based on mere conjecture or surmise, but that expression cannot aid the appellant in the instant case. In this case, there was evidence sufficient to support an inference of death by accidental means.

Without weighing the evidence we cannot discern

that the evidence is insufficient to support the verdict, and the judgment is affirmed.

Young, J., dissenting with opinion.

Richman, J., concurs in dissent.

NOTE.—Reported in 70 N. E. (2d) 24.

## DISSENTING OPINION

YOUNG, J.—I do not believe that any reasonable inference that the death of plaintiff's decedent was affected solely through accidental means may be drawn from the circumstances recited in the majority opinion.

Admittedly decedent was lying on the garage floor with his head near the engine exhaust and died from carbon monoxide poisoning. There was no evidence of how he came to be there. It is *possible* that he fell as he stepped out of his car after starting the motor; it is *possible* that he laid himself on the floor where he was found after starting the motor; but to my mind there is no evidence from which it may be reasonably inferred that he did either of these things. To choose from these and other *possibilities* means resort to guess and conjecture upon which a jury's verdict may not be based. *Orey* v. *Mutual Life Insurance Company of New York* (1939), 215 Ind. 305, 309, 19 N. E. (2d) 547; *The Prudential Insurance Company of America* v. *Van Wey et al.* (1946), 223 Ind. 198, 59 N. E. (2d) 721.

The majority opinion points to a red spot on decedent's forehead and cinders in his mouth as some evidence to indicate an accidental fall. There was no evidence that these were present when he lay on the garage floor. They were found after he had been dragged out of the garage and was lying in the alley and efforts to revive him had been made. No fair inference of acci-

dent in the garage can be drawn from the bruise or cinders under these circumstances.

Richman, J. concurs in this dissent.

NOTE.—Reported in 70 N. E. (2d) 24.