MRS. RUNIE I. HALLMARK V. UNITED FIDELITY
LIFE INSURANCE COMPANY

No. A-5329. Decided January 25, 1956.
(286 S.W. 2d Series 133)

*Helm & Jones* and *George E. Fletcher,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that the payment of a liquidated, undisputed item, admittedly due and owing, constituted a consideration for the release of a disputed item under the supplemental conrtact of insurance. Woodmen of the World Life Ins. Society v. Brown, 164 S.W. 190, no writ history; Buel v. Kansas City Life Ins. Co., 32 N.M. 34, 250 Pac. 635; DeSoto Life Ins. Co. v. Jeffert, 210 Ark. 371, 196 S.W. 2d 243.

*Storey, Sanders, Sherrill & Armstrong* and *Harold B. Sanders,* all of Dallas, and *Ned G. Wallace,* of Conroe, for respondents.

Petitioner's claim for benefit for the death of the insured was a single claim, according to the circumstances under which the death occurred, and having been paid by respondent as fixed by the parties, there was a payment of the disputed item and a release in full of such payment. Great Southern Life Ins. Co. v. Heavin, 39 S.W. 2d 851; Cockcroft v. Metropolitan Life Ins. Co., 125 Pa. St. 293, 189 Atl. 687; Long v. Aetna Life Ins. Co., 259 Mich. 206, 242 N.W. 889.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

The principal question presented by this appeal is, as stated in the application: "The Court (of Civil Appeals) erred in holding in effect that the payment of a liquidated, undisputed item, admittedly due and owing, constituted a consideration for the release of a disputed item under the supplemental contract of insurnace in question." We have concluded that the point is good.

There is little disputed about the facts, and petitioner says that the precise question has never been here.

On August 26, 1935, respondent issued to Carl C. Hallmark a life insurance policy for $1000, with petitioner as beneficiary. For an additional consideration the policy carried a double indemnity benefit if the insured should die "as the result of bodily injuries caused directly, exclusively and independently of all other causes by external, violent and accidental means." That he duly paid all premiums and that the policy was in effect at insured's death on April 7, 1948, is undisputed.

The jury found that Hallmark died on April 7, 1948, as the result of a coronary occlusion; that his death resulted from bodily injuries caused directly, exclusively and independently of all other causes, as the result of a series of shots or innoculations given to him from March 21 through April 1, 1948; that these injuries to Hallmark resulted from external, violent and accidental means as a direct result of the series of shots or inoculations given to him from March through April 1; that these injuries were evidenced by a visible bruise or wound on the exterior of his body, and that Hallmark's death did not

result directly or indirectly from any bodily or mental disease or infirmity.

Thus we have an insurance contract which is neither equivocal nor ambiguous. It promises in plain terms that insurer, *in addition to the amount payable under the life insurance policy,* will pay to the beneficiary or beneficiaries under the policy an additional $1000 in the event of the death of the insured resulting from bodily injuries caused directly, exclusively and independently of all other causes * * * * ."

■ This language created two separate and independent demands under the contract, with the conditions of liability as well as the amount of liability plainly stated; and it is $1000 or nothing under either. Yet respondent seeks to avoid payment of the $1000 for accidental death on the ground that it had paid the $1000 due for death regardless of its cause.

Cases holding contrary to the conclusion we have reached in this case disclose material, differentiating facts.

Illustrative of cases urged in support of the contention of nonliability because of settlement is Washington Nat'l Ins. Co. v. Cook, Texas Civ. App., 80 S.W. 2d 327, 328, error refused. The suit was for $3000 on an accident policy, which promised no other benefits except a named sum per day during the time of disability, not to exceed $3000. After a few weeks and after several per diem payments had been made to Cook, he accepted $50 in settlement of his claim, and executed a release of the insurance company from any further liability under the policy. He then returned to his job, but soon was compelled to quit, and did not ever again become able to resume work. In his suit subsequently filed for the full amount of the policy, Cook sought to avoid the effect of the release by plea that there was no consideration. Holding that the plea of no consideration was not available to him, the court said: Appellee's claim was single. It did not consist of two separate demands so as to make applicable the rule that the payment of one would not afford a consideration for the release of the other." The court further said that there was a consideration for the release because the amount collectible was *both unknown and unknowable when the settlement was made.* The court cites and discusses Great Southern Life Ins. Co. v. Heavin, Texas Com. App., 39 S.W. 2d 851, opinion approved, and Inter-Ocean Cas. Co. v. Johnston, 123 Texas 592, 72 S.W. 2d 583.

In the Heavin case, supra, (39 S.W. 2d 851) the policy created but a single demand, which was $35.10 if insured committed suicide, otherwise $3000. The insurance company tendered the $35.10. Although still asserting that insured was not a suicide, the widow accepted the $35.10 and executed a full release of any further claim under the policy. The jury did find there was no suicide, but the court said the matter of consideration can be weighed only as of the time of the agreement, hence there was a consideration for the settlement. In the Johnston case, supra, (72 S.W. 2d 583) the defendant Casualty Co. had issued Johnston an accident insurance policy for bodily injuries suffered by him by accidental means, etc. Johnston was struck by an automobile and was taken to a hospital, where a scalp wound was sewed up; and he returned to his law office the next day. He soon sent the insurance company a claim for his hospital expense of $23. The company immediately issued a check for that amount, endorsing on the back that it was in full settlement of all claims by Johnston, accrued and to accrue, on account of any accident already sustained and any disease or any illness theretofore contracted. Months later Johnston sued for insurance of $2400, less the $23 already paid, interest, penalty and attorney's fees, attacking the settlement on the ground that it was without consideration. The Court of Civil Appeals sustained Johnston on the theory "that at the time the settlemen was made neither Johnson nor the casualty company knew the extent of Johnston's injuries." The subsequent reversal by this court went principally on intent of the parties, but the fact remains that it might well have been reversed on the ground that there existed but a single demand, as that doctrine was discussed in the Cook case, supra, (80 S.W. 2d 327).

W. O. W. Life Ins. Society v. Smauley, Texas Civ. App. 153 S. W. 2d 608, 609, no writ history, decided by a special court, presents a close parallel to the case at bar. The insurance company issued a policy of $1000 on the life of the appellee's husband, Harry M. Smauley. Attached to the policy was a rider agreeing to pay the beneficiary, for a premium of 15 cents per week, an *additional* $1000 in the event of death "by accidental means." Upon due proof of death the beneficiary received a check for $997.30, which was the $1000 due on the death benefit provision less the current monthly premium of $2.70. The insurance company refused to pay the $1000 additional under the double indemnity provision of the policy, on the ground that insured's death was not accidental. The beneficiary sued. The insurance company defended on the ground that by accepting the $997.30 with a statement printed on the back, it was ac-

cepted by the beneficiary in payment of all benefits due under the policy. The Court of Civil Appeals held the defense was without merit; that there was no bona fide dispute between the parties over the $997.30; that it was no more than the insurance company had agreed to do in the event of insured's death; that it had no connection with the double indemnity agreement, which became an additional liability due and payable only in the event of accidental death of the insured; and that payment of an undisputed item, which is fully liquidated and admittedly due and owing does not constitute a consideration for the release of a disputed item between the same parties. On a subsequent appeal of the same case the holding on the first appeal was expressly approved by the regular Court of Civil Appeals at Fort Worth. W. O. W. Life Ins. Soc. v. Brown et al., 164 S.W. 2d 190, no writ history.

Another pertinent authority is American National Ins. Co. v. Walker, Texas Civ. App., 81 S.W. 2d 1061, no writ history. There the policy provided for a death benefit of $415 and on accidental benefit of $415. The general death claim of $415 was paid without controversy or dispute. So it was held that its payment was no consideration for a release of the accidental death claim, which was disputed. A parallel case from the Appellate Court of Indiana is Metropolitan Life Ins. Co. v. Glassman, 65 N.E. 2d 503, which was affirmed by the Supreme Court of Indiana, 224 Ind. 641, 70 N.E. 2d 24, but the question of the effect of the release was not considered because appellant waived it. In the annotation appearing in 112 A.L.R., on page 1224, first paragraph in column 1, it is said: "However, there is very little conflict on the question whether payment of an undisputed claim is a consideration for the discharge of another distinct and independent disputed claim, the general rule being that it is not." This declaration is followed by numerous citations in support. And see Buel v. Kansas City Life Ins. Co., 32 N.M. 34, 250 Pac. 635; 52 A.L.R. 367, Appelman's Insurance Law and Practice, Vol. 3, p. 280, sec. 1691 et seq.

The late case of Connell v. Provident Life & Accident Ins. Co., 148 Texas 311, 224 S.W. 2d p. 194, is not opposed to our conclusion here. It had to do with a claim for disability from accidental injuries , under a policy which insured claimant against disability both from disease and accident. Thus the claim was single, and nobody had any knowledge about how long the disability might last.

■ There remains but one other matter to be considered: re-

spondent's assertion that petitioner is estopped to claim the additional $1000 accidental death benefit.

The claimant's statement and death certificate, which were furnished to respondent by petitioner on April 22, 1948, stated that death was due to coronary occlusion and circulatory failure. The portion of the death certificate form which recited "If not due to disease, specify whether accident, suicide or homicide" was left blank. About eight days later petitioner received the $1000 payable under the policy in the event of natural death, and executed an instrument releasing respondent from all liability on the policy together with all supplemental contracts and agreement pertaining thereto. Respondent contends that in reliance upon these instruments furnished and executed by petitioner, it paid out its money exactly as demanded by petitioner, released its reserves, changed its books and records, and closed its file on the case without making a full investigation, and that petitioner is therefore estopped to assert the present cause of action.

As we view the case, it is not necessary for us to decide whether respondent has so changed its position as to work an estoppel against petitioner. It is generally essential to the application of the doctrine of equitable estoppel that the person claimed to be estopped shall have had full knowledge of the real facts at the time of his representation, concealment or other conduct relating thereto and alleged to constitute the basis of the estoppel. Richey v. Miller, 142 Texas 274, 177 S.W. 2d 255, 170 A.L.R. 832; Hunt v. W. O. W. Life Ins. Soc., Texas Civ. App., 153 S.W. 2d 857, error refused; 31 C.J.S., Estoppel, p. 264, § 70; 19 Am. Jur., p. 648, § 49. Petitioner did not learn that the shots may have caused the heart attack until some time after the $1000 was paid. She did, however, know that her husband had recently taken a physical examination preliminary to going overseas to work for his company. On April 20, 1948, she received a telegram stating that he had been accepted for this work. She knew, therefore, that he had passed the physical examination, and realized that it was something other than just an ordinary heart attack which caused his death.

No estoppel issues were submitted to the jury or requested by respondent, and we do not think that the circumstances mentioned above establish conclusively that petitioner knew such facts or was guilty of such negligence in failing to know them as to work an estoppel against her in this case.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered January 25, 1956.