LIGHT ET AL. *v.* LEND LEASE TRANSPORTATION CO.

[No. 19,048. Filed February 5, 1959.]

*John H. Beasley*, of Terre Haute, for appellant.

*Rosenfeld, Wolfe & Allen*, of Terre Haute, for appellee.

BIERLY, J.—This is an appeal by the appellants, defendants below, from a judgment of the Vigo Superior Court No. 2 in favor of appellee, plaintiff below, in an action brought by appellee to recover the reasonable value of an automobile leased by the appellee to appellants and which appellants failed to return to appellee after said lease is alleged to have been terminated.

Issues were joined upon the appellee's complaint filed herein, the appellants' answer thereto in two paragraphs, and appellee's reply to appellants' second paragraph of answer. Paragraph one of appellants' answer admitted the execution of the lease agreement between the parties, which lease agreement stated, among other things, that upon termination thereof the appellants would return a certain vehicle then in their possession in the same condition as it was when delivered to appellants, ordinary wear and tear excepted, and that the said lease has terminated and said car has not been returned, but denied that the reasonable value of said automobile at the time of the termination of said agreement was $1700.00. Paragraph two of said answer alleged that the lease agreement between the parties does not impose upon appellants the obligations of an insurer, and does not require appellants to return the automobile covered thereby, in the event of the theft or destruction of said automobile without the fault and in the absence of negligence on the part of the appellants, and that said automobile was stolen on or about the first day of February, 1952, without any

fault or negligence of the appellants, or either of them. Appellee's reply to appellants' second paragraph of answer admitted the execution of the lease agreement but denied that appellants were not obligated to return the automobile covered thereby, and denied that said lease agreement does not impose upon appellants the obligations of an insurer.

The questions presented to this court are: (a) Whether or not the automobile in question was stolen without any fault or negligence on the part of appellants, or either of them; (b) whether if so stolen, the appellants were thereby relieved of their obligation to return said automobile to appellee; and (c) the reasonable value of the automobile at the time of the termination of the lease agreement if appellants were not relieved of their obligation to return it to appellee.

Following the conclusion of the evidence, and subject to a stiplation by and between the parties, and after the court had overruled appellee's motion for special findings of facts and conclusions of law, for the reason that said motion was not timely made, the court entered its decision and rendered judgment thereon in favor of appellee and against appellants, which decision and judgment is as follows:

"The Court being duly advised, finds for the plaintiff (below) that the complaint is true; that the plaintiff has been damaged in the sum of Thirteen Hundred Twenty-five Dollars ($1325.00); that by stipulation of parties defendant is entitled to One Hundred Eighty Dollars and Eighty-five Cents ($180.85) credit on any damages found by the Court to have been sustained by plaintiff, and the Court therefore finds that the plaintiff should recover of the defendants the sum of Eleven Hundred Forty-four Dollars and Fifteen Cents ($1144.15) and the costs of this action.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the plaintiff

recover of the defendants the sum of Eleven Hundred Forty-four Dollars and Fifteen Cents ($1144.15) and the costs of this action."

A motion for a new trial was filed by appellants. Omitting caption and signature it reads as follows:

"Each of the defendants moves for a new trial herein on each of the following grounds:

"1. The decision of the Court is not sustained by sufficient evidence.

"2. The decision of the Court is contrary to law.

"3. The court erred in striking from the record, the answer of defendants' witness, Carl L. Mowry, testifying by deposition, to each of (certain) questions propounded by the defendants, and in sustaining plaintiff's objections to each of said questions. . . ."

The motion for a new trial as heretofore stated was overruled and this appeal followed.

The sole error assigned for reversal is that the trial court erred in overruling appellants' motion for a new trial.

Appellee complained that on September 4, 1951, plaintiff and defendants entered into a lease agreement by which plaintiff leased a certain 1951 Chevrolet automobile to the defendants herein under the terms of a lease agreement which states, among other things, that upon termination thereof defendants would return said vehicle then in their possession in the same condition as it was when delivered to defendants, ordinary wear and tear excepted; that said lease has terminated and said car has not been returned; and that the reasonable value of said automobile at the time of termination was $1700.00. The prayer of the complaint asked for judgment of said sum of $1700.00 and costs.

Lend Lease Transportation Company, a Minneapolis, Minnesota, organization, leased automobiles on an an-

nual basis to business organizations and corporations. One such organization was the National Literary Association of Terre Haute, Indiana, which leased a number of cars from appellee company. Appellants Leo E. Light and Roy C. Hodge were in the business of soliciting subscriptions for publishers, including said National Literary Association. One Carl L. Mowry testified by deposition that he was a crew manager for said appellants and had approximately fifty (50) persons working under him, and that his business was to take subscriptions under the name of National Literary Association and report them to Light and Hodge. On February 1, 1952, Mowry was engaged in such work in the Rochester, New York, area, and had custody of six (6) 1951 Chevrolets which he had leased through or from appellants. One of these cars was assigned to one Alton Bosworth and the keys thereto were entrusted to him with instructions that he should not give them out to anyone nor permit anyone else to drive the car. On January 31, 1952, these keys were in the possession of Bosworth. The witness (Mowry) and all his crew, including Bosworth, Charles Hopkins, and one Bennett stayed at the Powers Hotel in Rochester on the night of January 31st; that Bosworth reported for work on the morning of February 1, 1952, but Bennett and Hopkins failed to report and thereafter Mowry immediately called Federal and State police officers who searched Hopkins' luggage which was at the hotel. Bennett's bag or luggage was missing. Mowry further testified that there was only one set of keys to the automobile in question, which set was in Bosworth's possession; that Hopkins occupied the room with Bosworth the night before the disappearance of the automobile was reported. Mowry further testified that he has never seen Hopkins or Bennett since, and never

had a report that either was ever located or that the automobile was ever located or found.

Richard Harrington, a witness for appellants, testified that he was general manager of National Literary Association and in such capacity has complete authority as to the operation of the Company. Thus he executed the lease of the automobiles to said company and superintended the activities of the partnership of Light and Hodge with reference thereto and its relations with the appellee; that after the execution of the agreement with appellee, the National Literary Association sub-leased certain automobiles obtained from appellee under the agreement to Carl Mowry. He further testified that prior to February 1, 1952, five or six automobiles were sub-leased to Mowry who returned all of them except one.

The complaint alleged that the reasonable value of the automobile at the time of the termination of the lease or agreement was $1700.00. The parties agreed that if appellee is entitled to recover in this action the amount of its recovery is the reasonable value of the automobile at the time of the termination of the agreement. However, the appellants contend that there was no evidence introduced in the lower court as to the value of the car at that time nor any evidence having any probative value as to the reasonable value of the car at any time. Appellants further contend that the evidence clearly shows that the car in question was stolen while the lease agreement was in effect and that the theft was not the result of negligence of anyone directly or indirectly responsible therefor. Appellants further contend there is no evidence in the record as to the date of the termination of the bailment and there was no duty on the part of appellants to return

the car to appellee for the reason that it was stolen while the lease agreement was in effect.

Appellee contends that under the express terms of the lease appellants were bound to return the vehicle to appellee one year after October 30, 1951, in the absence of evidence that the vehicle had been driven 30,000 miles prior to that date, and that there was no such evidence, and that the bailment terminated when appellants failed to redeliver the chattel as provided in the contract between the parties. Appellee further contends that since there was a conflict in the evidence as to the fair market value of the automobile, the judgment of the court was obviously resolved in favor of the appellee inasmuch as appellee obtained judgment in the amount of $1325.00.

Finally, appellee further contended that there is no positive evidence to support the claim of appellants that the automobile was stolen.

It is contended by appellants that there is not a scintilla of evidence as to the date on which the agreement was terminated, and hence no evidence whatever as to the value of the car at that time.

The lease entered into by and between Lend Lease Transportation Company, as lessor, and the National Literary Association, as Lessee, with the Equipment Endorsement attached thereto and constituting a part of the lease or agreement, constituted a bailment, and appellants by its terms were required to redeliver the automobile on October 30, 1952, unless the said automobile had been driven 30,000 miles prior thereto. There is no evidence that the vehicle had been driven 30,000 miles prior to its disappearance. The evidence by appellants gave strong inference that the vehicle disappeared on or about February 1, 1952. The witness Harrington testified

that the lease was signed on or as of September 4, 1951. Thus the evidence was in conflict as to the date of the termination of the bailment. In 6 Am. Jur., Bailments, §333, p. 432, pertaining to the termination of bailment, it was stated: "A bailment may be determined by the total or partial destruction of the subject matter thereof, as where a chattel is lost or is destroyed." *New Jersey Electric R. Co.* v. *New York L. E. & W. R. Co.*, 61 N. J. L. 287, 41 A. 1116, 43 L. R. A. 849; *Morse* v. *Crawford*, 17 Vt. 499, 44 Am. Dec. 349; *Fuchs* v. *Goe*, 62 Wyo. 134, 163 P. 2d 783, 166 A. L. R. 1329.

Further, there was conflicting evidence as to the value of the automobile. Manager Harrington testified that the value of a 1951 Chevrolet two-door sedan would be between a minimum of $700.00 and a maximum of $1325.00 at any time during the year 1952. Appellee, by Kenneth Glaser, President, testified that a 1951 Chevrolet two-door Styleline sedan had a fair retail value as of October 30, 1952, of the sum of $1700.00.

It is the opinion of this court that there is sufficient conflicting evidence warranting this court to follow the well known principle of law that it is within the province of the trial court to resolve conflicting evidence. *Winfrey* v. *State Life Insurance Co.* (1949), 227 Ind. 449, 85 N. E. 2d 821; *Metropolitan Life Ins. Co.* v. *Glassman* (1946), 224 Ind. 641, 70 N. E. 2d 24.

Likewise, it is without the realm of judicial action by the Appellate Court to weigh conflicting evidence. *Oilar* v. *Oilar* (1919), 188 Ind. 125, 120 N. E. 705; *Jones* v. *Pressel* (1921), 75 Ind. App. 15, 128 N. E. 657.

In *Lowman* v. *Lowman* (1941), 109 Ind. App. 163, 33 N. E. 2d 780, Judge Bedwell ably stated the rule relating to conflicting evidence in these words:

"Under the rules repeatedly laid down by this and the Supreme Court, it is our duty to determine whether there is evidence in the record to sustain the finding of the trial court; and where there is conflicting evidence, even in equity cases, this court will not determine the credibility of witnesses, nor will it weigh or determine the probative force of conflicting evidence to determine where the preponderance lies. It will only determine whether there is substantial evidence which fairly tends to establish all the material issues and sustain the decision." Citing *Smith* v. *Hill* (1929), 200 Ind. 616, 620, 165 N. E. 911, 912; *Carpenter* v. *Carpenter* (1940), 108 Ind. App. 221, 27 N. E. (2d) 889.

Judge Kelley in *Pringle* v. *Broadstreet* (1958), — Ind. App. —, 154 N. E. 2d 413,[1] in referring to conflicting evidence, and especially ambiguous testimony of the witness, said:

"This high-lighted circumstance readily vouchsafes for the wisdom of the familiar rule that the weight and evaluation of the evidence must rest with the trier of the facts who not only hears the spoken word but observes the demeanor and facial expression of the witness and senses the general atmosphere created by him."

Thus sufficient evidence was presented to the trial court to justify the decision of the court relative to the value of the automobile and on the termination of the bailment.

Appellants' premise before the trial court was based upon the assumption that the vehicle was stolen; that appellants were without fault in its disappearance; and therefore appellants were not bound to return the automobile. Therefore the appellants contend that the decision of the court was contrary to law.

The true test as to whether the decision of the court was contrary to law must be measured by the principles

1. Superseded by Supreme Court opinion reported in 158 N. E. 2d 451.

of law relating to bailments. Appellants maintain that the undisputed evidence which was admitted by the court shows that the car in question was stolen while a lease agreement was in effect without any fault or negligence of the appellants, or either of them, as a result of which the appellants were relieved of their obligation to return the car to appellee. This view the appellee denies. Both the appellee and the appellants agree that the lease agreement is a contract of bailment. Appellants contend: "The law is well settled that in the absence of a specific agreement so to do, a bailee is not required by a bailor to return bailed property in event of loss by theft or destruction thereof, in the absence of negligence on the part of bailee." In *Archer* v. *Walker, Adm'r.* (1872), 38 Ind. 472, the Supreme Court held that the bailee was liable to the bailor for the value of bonds placed into the hands of third persons and stolen from these third persons. The Appellate Court in a celebrated case, *Keenan Hotel Co.* v. *Funk* (1932), 93 Ind. App. 677, 177 N. E. 364, quoted a case of foreign jurisdiction with approval as follows:

"... 'A bailee for hire of an automobile is liable to the owner for loss or injury resulting from his own or servants' wrongful or negligent acts or omissions. ...' *Blackburn* v. *Depoyster* (1925), 209 Ky. 105, 272 S. W. 398."

Where a contract of bailment contains no enlarging provision relative to the liability of bailee we deem it the law as stated in *Keenan Hotel Co.* v. *Funk, supra,* that fault on the part of the bailee is a criterion of bailee's liability, not just negligence.

Both appellants and appellee cite the case of *Venice* v. *Frazier Davis Const. Co.* (1949), 87 F. Supp. 475, in support of liability of the bailee under the rule of law pertaining to bailment, which states as follows:

". . . The contract involved in this litigation was a bailment for hire for the mutual advantage of the parties, i.e., a hiring of personal property for a stated period of time and for a sum of money for its use. The degree of care to be exercised by a bailee in a bailment for mutual benefit is placed by the law at ordinary care.

• • • • •

". . . Paragraph 6 provides: 'At the completion of the rental period we are to turn over to you at your yard in Panama City all steel in good condition, less ordinary wear and tear inherent to such type of work.' If paragraph 6 was the only provision expressing the duties or obligations of defendant relative to the returning of the steel in question, there would be no liability on defendant under the contract in absence of proof being offered that the damaged condition or loss was brought about through the negligent use or the failure of defendant to exercise ordinary care. *Reconstruction Finance Corp.* v. *Peterson Bros.*, 5 Cir., 160 F. 2d 124."

In the above quoted case an additional paragraph 7 provided a special agreement whereby the defendant bailee enlarged its legal responsibility for the return of the property bailed. The decision of the court in this case was made entirely on the basis of paragraph 7 and paragraph 6 was not taken into account in rendering the decision of the court.

Appellants agree that when a bailor proves a contract, the delivery of the bailed chattel to the bailee, and the failure of the bailee to return the chattel to bailor at the termination of the lease, this constitues a *prima facie* case, and the bailee must then furnish evidence to establish that the chattel was destroyed or stolen without fault on the part of bailee. *State Storage, Inc.* v. *Scheper* (1932), 95 Ind. App. 157, 181 N. E. 385; *Keenan Hotel Co.* v. *Funk, supra.*

In the *Keenan Hotel* case Judge Wood, at page 681, stated:

". . . And such *prima facie* case is not overcome by a showing on the part of the bailee that the goods have been burned, or otherwise destroyed or stolen. Before such *prima facie* case can be said to be overcome, the bailee must further produce evidence tending to prove that the loss, damage or theft was occasioned without his fault. . . ."

The test as to whether the bailee has failed to comply with the duties imposed by law upon him ■ is a question of fact to be determined by the court or jury. *Keenan Hotel Co.* v. *Funk, supra.*

Appellants contend that the automobile was stolen without fault or negligence on their part. Since the disappearance of the automobile plays such a part in this case some of the testimony of Carl Mowry, by deposition, is very apropos and fitting:

"Q. Now were you engaged in such work for Mr. Light and Mr. Hodge on February 1, 1952? A. Yes.

"Q. And at that time where were you working? A. In Rochester, New York.

"Q. And at that time did you have a man named Alton Bosworth working for you? A. Yes.

"Q. How long prior to February 1, 1952, had he been employed by you? A. About one year.

"Q. Now on February 1, 1952, did you have a Charles Hopkins in your employ? A. Yes.

"Q. And what work did he perform? A. He was a solicitor, house to house.

"Q. And how long had he worked for you prior to February 1, 1952? A. About two months.

"Q. And on February 1, 1952, did you have in your employ as a solicitor a person named Bennett? A. Yes.

"Q. Do you recall his first name? A. No.

"Q. And how long prior to that date had he come to work for you? A. About two months."

And further, in Mowry's testimony of assigning automobiles to some crew managers, these questions and answers appeared:

"Q. And on January 31, 1952, was one of these such automobiles assigned to Alton Bosworth? A. Yes."

Mowry further testified he gave the keys to this automobile to Bosworth with instructions that he keep the keys in his possession at all times; that he was to give them to no one; and that Bosworth only was to drive the car. He further testified that he obtained lodging in Rochester for his crew and himself. Certain questions and answers are so pertinent they are here reproduced:

"Q. Was all of your crew quartered in the Powers Hotel? A. Yes.

"Q. Do you know whether or not Mr. Bosworth, Mr. Hopkins and Mr. Bennett stayed at the Powers Hotel on that night? A. Yes, they all stayed at the Powers Hotel, and Mr. Hopkins and Mr. Bosworth were in the same room.

"Q. Did Mr. Hopkins report for work (that's the roommate), report for work on the morning of February 1, 1952? A. No, he didn't report nor did the other fellow.

"Q. By the other fellow you are referring to Mr. Bennett? A. Yes."

Mowry further testified that he never saw or heard of Hopkins, Bennett or the whereabouts of the automobile thereafter; but that Bosworth was retained as a solicitor for about one year when he was killed in an automobile accident.

Since appellee's motion requesting special findings of fact and conclusions of law by the trial court was untimely made, this Court is without information as to what the special findings and conclusions of law

would have contained. Suffice it to say that the testimony of Mowry is susceptible of many conjectural inferences and leaves many pertinent facts undeveloped.

In the case of *Morrow, Inc.*, v. *Paugh* (1950), 120 Ind. App. 458, 91 N. E. 2d 858, the agreement made and entered into by and between the parties and designated as a "Truck Lease" was set forth in its entirety. Clause 4 of said agreement or contract or lease reads as follows:

> "Upon the expiration of this lease possession of the vehicle or vehicles will promptly be restored to the lessor in as good condition as when received by the lessee, ordinary wear and tear excepted."

The evidence disclosed that enroute during the course of a shipment of goods, the truck was in collision with an automobile. As a result of the collision, the truck was destroyed by fire. The court in its decision affirmed the trial court and held at page 465:

> "Surely it cannot be asserted it was unreasonable to assume the parties had in mind that in the performance of this contract such an accident might happen. Therefore the accident by which appellee's vehicle was destroyed did not relieve appellant of the obligation it assumed by reason of the unequivocal provision of Clause 4 of the contract."

Clause 19 of the contract in the case under consideration under the heading "Return of Vehicle" reads as follows:

> "Upon termination of this agreement . . . Customer agrees to return all vehicles then in his possession hereunder to Lessor (appellee) at 1207 Harmon Place, Minneapolis, Minnesota, in the same condition as each was in when delivered to Customer, ordinary wear and tear excepted."

This Clause 19 contains no exception or exceptions relating to unforeseen contingencies that might arise

as to the impossibility of the redelivery of the auto-mobile.

The court, in *Morrow, Inc.* v. *Paugh, supra,* at page 464, accepted the view expressed in 12 Am. Jur., p. 935, §336, as quoted:

". . . One view is that where the event which causes the impossibility was or might have been anticipated and guarded against in the contract, an unqualified undertaking is to be construed as an absolute contract binding the promisor to perform things which subsequently became impossible or to pay damages for the non-performance. . . ."

In West's Indiana Law Encyclopedia, Bail- 8, 9. ment, Vol. 4, §7, p. 9, it is stated:

"A bailee may be liable although the property is destroyed by accident, where the bailee agreed to restore possession of this property in as good condition as when received.

. . .

"Where lessee of motor vehicle agreed upon expiration of lease to restore possession to lessor in as good condition as when received by lessee, ordinary wear and tear excepted, and vehicle was destroyed by fire while in possession of lessee, lessee was not relieved of obligation to restore vehicle and was liable for damages for its loss." Citing *Morrow, Inc.*, v. *Paugh, supra.*

In his testimony by deposition, the said witness Mowry was asked by counsel whether Bosworth was present on February 1, 1952. He answered as follows:

"Yes, he reported early to me and told me that the keys to his car had been stolen, and also his wallet, with his driver's license, was missing."

Mowry was likewise asked by counsel if Bosworth gave any explanation of the disappearance of these items. He answered:

"He thought that his roommate had taken the keys to the car and also his wallet, that Mr. Hop-

kins had taken them. He told me he thought during the middle of the night he had been struck a blow on the head, although there was no outside appearance of him being hit."

Objection was made to the questions and, apparently, a motion to strike the answers on the ground that the same constituted hearsay. Upon advisement the court ordered both answers stricken except the word "yes" to the first question. Appellants assert error in the ruling of the court and argue extensively that the answers were proper as an exception to the hearsay rule. However, it seems unnecessary to dwell at length on the contention because it is clear that the ruling of the court was proper. The first question did not call for that part of the answer ordered stricken and the same was not responsive to the question. It amounted only to a voluntary statement of the witness and, for whatever reason the court ordered it stricken, there was no error in the ruling. Likewise, the court did not commit error in its ruling on the answer to the second question which was merely a supposition on the part of Bosworth.

The facts as disclosed in the Morrow case are different from the case at bar but the underlying principles of law are the same. In the Morrow case the truck was destroyed by fire, while in the case at bar the automobile was apparently stolen.

This court being of the unanimous opinion that the questions involved herein are of sufficient importance that the two divisions should sit in banc for the consideration and decision of said cause, said court did so sit in banc.

This court concludes that the Morrow case, *supra,* is a case in point and that the trial court's decision in the case at bar is not contrary to law.

We find no reversible error by the trial court in overruling appellants' motion for a new trial.

Judgment affirmed.

NOTE.—Reported in 156 N. E. 2d 94.