**Reverse and Remanded and Opinion Filed June 5, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-21-00904-CV
_____

**ROGER CORNELL FOX, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KAREN NASINE FOX, Appellant**

**V.**

**THE REHABILITATION & WELLNESS CENTRE OF DALLAS, LLC AND BRIUS, LLC, Appellee**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-01019**

## MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Molberg

In this wrongful death and survival action, appellant Roger Cornell Fox, individually and on behalf of the Estate of Karen Nasine Fox, his late wife, appeals the trial court's order dismissing Fox's claims and granting the "Motion to Dismiss, Motion to Compel Arbitration, or, in the Alternative, Stay Proceedings" filed by appellees The Rehabilitation & Wellness Centre of Dallas, LLC (TRWCD) and Brius, LLC.  On appeal, Fox argues the trial court erred in finding a valid arbitration agreement existed because Mrs. Fox did not sign the arbitration agreement and

appellees failed to prove she conferred authority on him to sign on her behalf.  In this memorandum opinion, *see* TEX. R. APP. P. 47.4, because we conclude appellees failed to meet their initial evidentiary burden to prove the existence of a valid, enforceable arbitration agreement, we reverse the trial court's order and remand the case for further proceedings.

## I.  BACKGROUND

In their motion, appellees asked the trial court to dismiss or stay Fox's claims pending arbitration of their dispute because (1) Fox signed a valid arbitration agreement on Mrs. Fox's behalf, and (2) the claims in the lawsuit are within the agreement's scope.  Fox opposed the motion and argued appellees failed to establish the existence of a valid arbitration agreement because they presented no proof of any actions by Mrs. Fox authorizing Fox to sign on her behalf.  Fox made no argument regarding the agreement's scope.

Both parties attached various unauthenticated documents to their filings. Appellees attached only one item to their motion—a two-page, unauthenticated "Resident and Center Arbitration Agreement" ("the Agreement"), that states, in part:

> RESIDENT AND CENTER ARBITRATION
> AGREEMENT - READ CAREFULLY
>
> It is understood and agreed by ("Center") and ("Resident," or "Resident's Authorized Representative", hereinafter collectively "Resident")[1] that they shall use their best efforts to resolve any legal

---

[1] The Agreement's text does not name Fox, Mrs. Fox, TRWCD, or Brius, LLC or identify the parties to the Agreement, as it does not define "Center," "Resident," or "Resident's Authorized Representative." Though the Agreement's text later refers to it, no "Resident Admission Agreement" is in the record.

dispute . . . that arises out of or relates to the Resident Admission Agreement or any service or health care provided by Center to Resident, and that they will consult and negotiate with each other in good faith to attempt to reach a fair solution satisfactory to both. If Center and Resident do not reach a solution within a period of sixty (60) days, upon written notice by either party to the other, the claim shall be resolved exclusively by binding arbitration. . . .

This agreement to arbitrate includes, but is not limited to, any claim for . . . negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical or health care or safety whether sounding in tort or in contract. . . .

. . . .

It is the intention of the parties to this arbitration agreement that it shall inure to the benefit of and bind the parties, their successors and assigns, including . . . any parent, spouse . . . or heir of Resident.

. . . .

**The parties understand and agree that by entering this arbitration agreement they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury.**

. . . .

This arbitration agreement shall be governed and interpreted under the Federal Arbitration Act. 9 U.S.C. §§ 1–16.

By virtue of Resident's consent, instruction and/or durable power of attorney, I hereby certify that I am authorized to act as Resident's agent in executing . . . on his/her and my behalf the arbitration agreement.

Legal Representative/Agent (if any)     Date 2/18/19

Karen Fox
Resident Printed Name

Facility's Authorized Agent     Date 2/18/19

Brianna Crable
Facility's Authorized Agent Printed Name

–3–

Fox attached various unauthenticated items to his response, including, but not limited to, a power of attorney form purportedly signed by Mrs. Fox on August 1, 2019, over five months after the handwritten date reflected in the Agreement appellees attached to their motion.

The trial court held a hearing on appellees' motion, but it was not evidentiary. The appellate record contains a hearing transcript. During the hearing, the parties' counsel made arguments, but neither party called witnesses or made any attempt to authenticate, offer, or admit any items into evidence. After counsel's arguments, the court stated:

> THE COURT: All right. I am going to go ahead and abate for the purposes of the mediation, or whatever is the term of art used in the Agreement. If no agreement is reached, then I'm going to send it to arbitration.

The court later signed an order granting appellees' motion. The order required the parties, for a period of sixty days following the order's entry, to consult and in good faith attempt to reach a fair solution satisfactory to both sides; ordered the parties, if they did not reach a solution within that period, to proceed to binding arbitration on any and all claims, issues, complaints and causes of action raised or that could have been raised against appellees in Fox's original petition; and stated, "all matters and proceedings between [the parties] in this cause of action shall be DISMISSED following the sixty (60) day negotiation period, pending resolution of the arbitration of [Fox's] claims."

## II. ISSUES AND ANALYSIS

Fox timely appealed.[2]  In his sole issue on appeal, Fox argues the trial court erred in finding a valid arbitration agreement existed because Mrs. Fox did not sign the arbitration agreement and appellees failed to prove Mrs. Fox conferred authority on Mr. Fox to sign on her behalf.  As explained below, we conclude appellees failed to establish the existence of a valid arbitration agreement and thus agree the trial court erred.

In their response on appeal, appellees dispute Fox's position and raise other issues as well, including, but not limited to, twice asking us to dismiss the appeal—first in a letter brief arguing we lack jurisdiction, and second in their appellate brief, arguing we should dismiss the appeal because Fox had not yet filed a docketing statement.  We already considered the parties' letter briefs regarding our jurisdiction and concluded we have it, for the same reason we include below.

We need not consider appellees' argument on the docketing statement, as it is moot.[3]  We also need not consider new issues appellees raise for the first time on appeal, such as whether Fox signed the arbitration agreement in his personal capacity and whether Fox's claims should be arbitrated based on an equitable estoppel theory,

---

[2] In their letter briefs regarding jurisdiction, Fox stated, and appellees did not dispute, that his claims were dismissed on October 24, 2021, at the conclusion of the negotiation period and the sixtieth day after the trial court signed its order.  While Fox filed his notice of appeal before that date, his notice is appeal is effective and deemed filed on that date—the day of, but after, the dismissal of his claims.  *See* TEX. R. APP. P. 27.1(a) ("In a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal.").

[3] Fox filed a docketing statement in our Court on February 15, 2022, over eight months before the appeal was submitted to us without oral argument.

as these issues could not have formed the basis for the trial court's decision, when they were not raised below. *See Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) (stating the court does not consider issues not presented in the trial court but noting parties are free to construct new arguments in support of issues properly before the court).

## A.    Jurisdiction Over the Appeal

Before we address Fox's issue, we first explain our conclusion that we have jurisdiction over this appeal.  Because we initially questioned it, we asked Fox to submit a jurisdictional letter brief and allowed appellees to submit a letter brief in response.  After reviewing those letters, we informed the parties it appears we have jurisdiction over this appeal.  Neither party has asked us to reconsider that view.

Although it is not authenticated, the Agreement attached to appellees' motion states it "shall be governed and interpreted under the Federal Arbitration Act" (FAA).  *See* 9 U.S.C. §§ 1–16.  The Texas Civil Practice and Remedies Code states,

> In a matter subject to the FAA, a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.

TEX. CIV. PRAC. & REM. CODE ANN. § 51.016.

While the FAA "makes no provision for an interlocutory appeal from an order compelling arbitration," such an order "can clearly be reviewed on appeal from a final judgment." *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007) (per curiam)

–6–

(stating, "The United States Supreme Court has said that orders compelling arbitration can be reviewed after final judgment in the case.") (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000)); *see* 9 U.S.C. § 16(a)(3) (stating an appeal may be taken from "a final decision with respect to an arbitration that is subject to this title"). Thus, "[c]ourts may review an order compelling arbitration if the order also dismisses the underlying litigation so it is final rather than interlocutory." *In re Gulf Expl., LLC*, 289 S.W.3d 836, 839 n.14 (Tex. 2009) (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 586 n.13 (Tex.2008)).

Here, in their motion and in the hearing, appellees asked the trial court to either stay or dismiss the proceedings. The trial court did the latter,[4] compelling and ordering the parties to arbitration if they did not reach a solution after a sixty-day negotiation period, and stating in its order, "all matters and proceedings between [the parties] in this cause of action shall be DISMISSED following the sixty (60) day negotiation period"), pending resolution of the arbitration of [Fox's] claims."

We have jurisdiction over this appeal because the trial court's order dismissed the proceedings. *See In re Gulf Expl., LLC*, 289 S.W.3d at 839 n.14.

## B. Validity of the Agreement

We turn to Fox's sole issue, in which he argues the trial court erred in finding there was a valid arbitration agreement because Mrs. Fox did not sign the arbitration

---

[4] We do not decide the propriety of dismissal rather than a stay, as neither party has raised the issue.

agreement and appellees failed to prove Mrs. Fox conferred authority on Mr. Fox to sign on her behalf.

Under the FAA, a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the disputed claims fall within the scope of that agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). A trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

In *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266 (Tex. 1992), the court described how trial courts are to review disputes regarding arbitration, explaining:

> Because the main benefits of arbitration lie in expedited and less expensive disposition of a dispute, and the legislature has mandated that a motion to compel arbitration be decided summarily, we think it unlikely that the legislature intended the issue to be resolved following a full evidentiary hearing in all cases. We also envision that the hearing at which a motion to compel arbitration is decided would ordinarily involve application of the terms of the arbitration agreement to undisputed facts, amenable to *proof by affidavit*. With these considerations in mind, we hold that the trial court may summarily decide whether to compel arbitration on the basis of *affidavits, pleadings, discovery, and stipulations*. However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts.

*Id*. at 269 (emphasis added) (internal footnote omitted). We discussed these and other standards in *Constant v. Gillespie*, No. 05-20-00734-CV, 2022 WL 1564555,

*4–5 (Tex. App.—Dallas May 18, 2022, no pet.) (mem. op.).[5] We also reaffirmed that a party moving to compel arbitration "is required to put forth competent, prima facie evidence of the arbitration agreement itself." *Id.* at *6.

---

[5] In *Constant*, which involved a denial of a motion to compel arbitration, we stated:

A party seeking to compel arbitration must establish two things: (1) the existence of a valid, enforceable arbitration agreement and (2) that the disputed claim falls within the scope of that agreement. *See Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2021). When deciding whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration. *Emery v. Hilltop Sec., Inc.*, No. 05-18-00697-CV, 2019 WL 4010775, at *5 (Tex. App.—Dallas Aug. 26, 2019, no pet.) (mem. op.). Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 827 (Tex. App.—Dallas 2013, no pet.).

After the party seeking to compel arbitration satisfies its initial evidentiary burden, the burden then shifts to the party seeking to avoid arbitration to raise an affirmative defense to the enforcement of the otherwise valid arbitration provision. *See Haddington Fund, LP v. Kidwell*, No. 05-19-01202-CV, 2022 WL 100111, at *4 (Tex. App.—Dallas Jan. 11, 2022, pet. filed) (mem. op.). In the absence of a valid defense, the trial court has no discretion—it must compel arbitration and stay its own proceedings. *Id.*

A motion to compel arbitration is initially presented to the trial court in a summary proceeding on the basis of affidavits, pleadings, discovery, and stipulations. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding); *GJ Partners, Ltd. v. Cima Contractors, LLC*, No. 05-18-01412-CV, 2020 WL 400180, at *3 (Tex. App.—Dallas Jan. 23, 2020, pet. denied) (mem. op.). The summary disposition of a motion to compel arbitration is governed by the same evidentiary standards as a motion for partial summary judgment. *See Tex. Health Res. v. Kruse*, No. 05-13-01754-CV, 2014 WL 3408636, at *6 (Tex. App.—Dallas July 11, 2014, pet. denied) (mem. op.).

A trial court, however, must forgo summary disposition and hold an evidentiary hearing on a motion to compel arbitration when there is a genuine question of material fact concerning the existence of an arbitration agreement. *See id.* Specifically, the Supreme Court of Texas has stated: "[I]f the material facts necessary to determine the issue [of whether to compel arbitration] are controverted, by an opposing affidavit or otherwise admissible evidence, [then] the trial court must conduct an evidentiary hearing to determine the disputed material facts." *Jack B. Anglin, Co., Inc.*, 842 S.W.2d at 269. . . .

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Wagner*, 627 S.W.3d at 283. Under this standard of review, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *Redi-Mix, LLC v. Martinez*, No. 05-17-01347-CV, 2018 WL 3569612, at *2 (Tex. App.—Dallas July 25, 2018, no pet.) (mem. op.).

Appellees, the movants, failed to do this. Rather than submitting with their motion any "affidavits, pleadings, discovery, or stipulations" to support their motion, *see Tipps*, 842 S.W.2d at 269, appellees attached to their motion only the two-page unauthenticated Agreement, and they submitted no evidence at the later non-evidentiary hearing.

*Constant* involved the same problem, as the movant in that case merely attached to his motion exhibits containing arbitration provisions but did not submit any affidavits from a witness to authenticate any of his exhibits. 2022 WL 1564555 at *6. Because "[s]imply attaching a document to a motion does not make the document admissible as evidence, dispense with proper foundational evidentiary requirements, or relieve a litigant of complying with other admissibility requirements[,]" we concluded that, as a matter of law, the movant's mere attachment of the purported arbitration agreement as an exhibit to his motion, without more, "submitted no evidence of a valid arbitration agreement to the trial court[,]" *id*. at *6, and "was insufficient to meet [the movant's] initial evidentiary

---

Whether disputed claims fall within the scope of an arbitration agreement is a question of law that we review de novo. *Wagner*, 627 S.W.3d at 283.

Where . . . the trial court makes no written findings of fact or conclusions of law in support of its ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Redi-Mix, LLC*, 2018 WL 3569612, at *2. We affirm the ruling if it can be upheld on any legal theory supported by the evidence. *Id*. We reverse a trial court for abusing its discretion only when we determine the court acted in an unreasonable or arbitrary manner, meaning that it acted without reference to any guiding rules and principles. *Id*.

2022 WL 1564555, at *4–5.

–10–

burden to prove the existence of a valid, enforceable arbitration agreement." *Id*. at *1, 4; *see id*. at *9 (stating similar conclusion).

Although the record before us justifies the same conclusion, both parties ignore this problem, just as the trial court did. Even if we, too, ignore the problem and assume, as we do, that appellees properly authenticated the Agreement, another fundamental problem exists: the lack of any evidence that Fox signed the Agreement on Mrs. Fox's behalf.

"[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). "Whether parties have agreed to arbitrate is a gateway matter ordinarily committed to the trial court and controlled by state law governing 'the validity, revocability, and enforceability of contracts generally.'" *Id*. (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). "The question of '[w]ho is actually bound by an arbitration agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement.'" *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355, 358 (5th Cir.2003)). Generally, parties must sign arbitration agreements before being bound by them, *id*., but an obligation to arbitrate not only attaches to one who has personally signed the written arbitration agreement but may also bind

a non-signatory under principles of contract law and agency. *Id.*; *see In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738.

Here, even assuming the Agreement was properly authenticated, the non-signatory is Mrs. Fox, Fox's late wife. As Fox's wrongful death and survival claims are all derivative of Mrs. Fox's claims, *see Prestonwood Tradition, LP v. Jennings*, 653 S.W.3d 436, 441–43 (Tex. App.—Dallas 2022, no pet.), the central dispute before us is whether appellees established the existence of a valid arbitration agreement with Mrs. Fox, under principles of contract law and agency.

In the trial court, appellees argued they did so, on the theory that Fox signed the Agreement on Mrs. Fox's behalf. Appellees' motion states, "On February 18, 2019, Karen Fox's husband Roger Fox, acting as Mrs. Fox's legal representative, signed the [Agreement] as evidenced by his signature on the document. . . . The document was also signed by a [TRWC] facility representative."

In *Gaines v. Kelly*, 235 S.W.3d 179, 182–83 (Tex. 2007), the Court stated:

> An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). . . .
>
> Apparent authority, we have said, is based on estoppel, arising "either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex.1998). We have further noted that the principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel. *Rourke v. Garza*, 530 S.W.2d 794, 803 (Tex.1975) (citing *Hallmark v. United Fid. Life Ins. Co.*, 155

Tex. 291, 286 S.W.2d 133 (1956)). Moreover, when making that determination, only the conduct of the principal is relevant. *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex.1996) (per curiam). Finally, the standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422, 427 (1953). Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority.

No such evidence exists in the record before us. Even assuming the Agreement was properly authenticated, the record lacks evidence of the conduct of Mrs. Fox, the alleged principal; appellees' assumptions about Fox's authority, if any; and any circumstances from which we could determine whether such assumptions, if any, are reasonable.

We agree with Fox that, despite his signature on the Agreement under language purportedly "certifying" that he was acting as her agent, the record lacks any evidence showing that an agency relationship did, in fact, exist between Fox and Mrs. Fox at the time he signed the Agreement. Appellees argue, in essence, that the Agreement itself evidences Mrs. Fox's granting of authority to Fox because Fox signed the Agreement below language stating, "By virtue of Resident's consent, instruction and/or durable power of attorney, I hereby certify that I am authorized to act as Resident's agent in executing . . . on his/her and my behalf the arbitration agreement." We disagree. Fox's signature on the Agreement fails to establish Fox

did, in fact, have Mrs. Fox's consent or authorization to sign it on her behalf and constitutes, at most, no more than a scintilla of evidence that Fox was her agent.[6]

Based on the record before us, we conclude the trial court erred in compelling arbitration and dismissing Fox's claims because appellees failed to meet their initial evidentiary burden to prove the existence of a valid, enforceable arbitration agreement. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737 (establishing burden is appellees', as movants); *Tex. Cityview Care Ctr., L.P. v. Fryer*, 227 S.W.3d 345, 352 (Tex. App.—Fort Worth 2007, pet. dism'd) (noting the party alleging agency has the burden to prove its existence and that absent actual or apparent authority, an agent cannot bind a principal). We sustain Fox's sole issue.

### III. CONCLUSION

We reverse the trial court's August 25, 2021 order and remand the case for further proceedings consistent with this opinion.

/Ken Molberg/

210904f.p05

KEN MOLBERG
JUSTICE

---

[6] Though not directly on point, as the case did not involve arbitration and involved an appeal following a bench trial in which the trial court issued findings of fact and conclusions of law, appellees' position is similar to the position taken by the lender in *Tong v. Nationstar Mortgage LLC*, No. 05-19-01558-CV, 2023 WL 2422482 (Tex. App.—Dallas March 9, 2023, no pet. h.) (mem. op.). In *Tong*, we were unpersuaded by the lender's argument that the husband's signature on a home equity affidavit signed at the loan's closing constituted proof of the wife's consent to the home equity loan, even though the affidavit stated, in part, "The Extension of Credit is secured by a voluntary lien on the Property created under a written agreement with the consent of all owners and all spouses of owners and execution of this [affidavit] is deemed evidence of such consent." *Id*. at *10. We stated that we did not believe such evidence "would allow one to reasonably conclude the wife consented to the lien," and concluded that, "[t]o the extent the affidavit is any evidence at all of [the wife's] consent to the lien . . . it is nothing more than a scintilla." *Id*.

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROGER CORNELL FOX, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KAREN NASINE FOX, Appellant

No. 05-21-00904-CV    V.

THE REHABILITATION & WELLNESS CENTRE OF DALLAS, LLC AND BRIUS, LLC, Appellees

On Appeal from the 298th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-21-01019. Opinion delivered by Justice Molberg. Justices Partida-Kipness and Carlyle participating.

In accordance with this Court's opinion of this date, the trial court's August 25, 2021 order is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant ROGER CORNELL FOX, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KAREN NASINE FOX recover his costs of this appeal from appellees THE REHABILITATION & WELLNESS CENTRE OF DALLAS, LLC AND BRIUS, LLC.

Judgment entered this 5th day of June, 2023.